**SCHEDULED FOR ORAL ARGUMENT ON FRIDAY, MARCH 22, 2019**

# United States Court of Appeals
# for the District of Columbia Circuit

### No. 19-5042
Consolidated with 19-5043, 19-5044

DAMIEN GUEDES; *et al.*,

*Plaintiffs – Appellants*,

FIREARMS POLICY COALITION, INC.,

*Plaintiff – Appellant*,

v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, et al.,

*Defendants – Appellees*.

*Appeals from the United States District Court for the District of Columbia in Case no. 1:18-cv-02988-DLF-BAH, Dabney L. Friedrich*

## BRIEF FOR APPELLANTS
## DAVID CODREA, SCOTT HEUMAN and OWEN MONROE

STEPHEN D. STAMBOULIEH
STAMBOULIEH LAW, PLLC
P.O. Box 4008
Madison, MS  39130
(601) 852-3440
stephen@sdslaw.us
*Counsel for Appellants David Codrea, Scott Heuman and Owen Monroe*

ALAN ALEXANDER BECK
LAW OFFICE OF ALAN BECK
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Alan.alexander.beck@gmail.com
*Application to be submitted

## CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), undersigned counsel for Appellants hereby provide the following information:

## I.     PARTIES AND *AMICI* APPEARING BELOW

1. The defendants in district court, and appellees here, are: Attorney General William Barr, in his official capacity[1] and the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives, an agency of the Department of Justice. The plaintiffs in district court, and appellants here are: David Codrea, Owen Monroe, and Scott Heuman. Damien Guedes; Firearms Policy Coalition, Inc.; Firearms Policy Foundation; Madison Society Foundation, Inc.; Shane Roden; and Florida Carry, Inc. were plaintiffs in related cases in the district court and are appellants in cases that have been consolidated with the instant case (No. 19-5042; No. 19-5043). No *amicus curiae* appeared in the district court.

## II.     PARTIES AND AMICI APPEARING IN THIS COURT

1. The parties in this court, and appellees here, are: Attorney General William Barr, in his official capacity and the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives, an agency of

---

[1] Substituted automatically for Acting Attorney General Matthew Whitaker.

the Department of Justice. The parties in district court, and appellants here are: David Codrea, Owen Monroe, and Scott Heuman. Damien Guedes; Firearms Policy Coalition, Inc.; Firearms Policy Foundation; Madison Society Foundation, Inc.; Shane Roden; and Florida Carry, Inc. were plaintiffs in related cases in the district court and are appellants in cases that have been consolidated with the instant case (No. 19-5042; No. 19-5043). No *amicus curiae* have appeared in this Court.

## III.    RULINGS UNDER REVIEW

1. Under review in this appeal are an order and memorandum entered on February 25, 2019, in the U.S. District Court for the District of Columbia, No. 1:18-cv-03086-DLF - ECF Nos. 21 and 22. The matter was before the Honorable U.S. District Judge Dabney L. Friedrich.

## IV.    RELATED CASES

1. The case on review was not previously before this Court. The following cases involve some of the same parties and/or the same or similar issues as presented in this appeal: *In re Grand Jury Investigation* (D.C. Cir. 18-3052, oral argument held Nov. 8, 2018, before Judges Henderson, Rogers, and Srinivasan), *United States ex rel. Landis v. Tailwind Sports*

*Corp.* (D.C. Cir. No. 18-7143), *Blumenthal v. Whitaker* (D.D.C.  No. 1:18-cv-02644) (voluntarily dismissed), *O.A. v. Trump* (D.D.C.  No. 1:18-cv-02718), *Michaels v.  Whitaker* (D.D.C.  No. 1:18-cv-02906), *Damien Guedes et al. v. Bureau of Alcohol, Tobacco, Firearms and Explosives* (D.D.C. No. 1:18-cv-2988), *Firearms Policy Coalition, Inc. v. Bureau of Alcohol, Tobacco, Firearms and Explosives* (D.D.C. No. 1:18-cv-3083). To the best of undersigned counsel's knowledge, there are no other related cases pending before this Court, any other U.S. court of appeals, or any local or federal court in the District of Columbia.

Respectfully submitted,

/s/ Stephen D. Stamboulieh
STEPHEN D. STAMBOULIEH
STAMBOULIEH LAW, PLLC
P.O. Box 4008
Madison, MS  39130
(601) 852-3440
stephen@sdslaw.us
*Counsel for Appellants David Codrea, Scott Heuman and Owen Monroe*

ALAN ALEXANDER BECK
LAW OFFICE OF ALAN BECK
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Alan.alexander.beck@gmail.com
*Application to be submitted

iv

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………..…..………………vi

GLOSSARY OF TERMS……………………………………….………viii

INTRODUCTION………………………………………………...……..1

JURISDICTIONAL STATEMENT……………………………….……..2

STATEMENT OF ISSUES PRESENTED FOR REVIEW………………………..3

STATEMENT OF THE CASE……………………………………...……..3

PROCEDURAL HISTORY…………………………………………..……7

SUMMARY OF THE ARGUMENT…………………………..………..7

STANDARD OF REVIEW……………………………...…………8

ARGUMENT…………………………………………………..………8

   A. The District Court Abused Its Discretion in Denying Appellants' Motion for Preliminary Injunction

     i.  The District Court Applied the Incorrect Legal Analysis……………8

     ii.  The District Court Incorrectly Found That Certain Terms Were Ambiguous……………………………………………………..12

     iii.  The District Court Clearly Erred in its Factual Findings……..……...14

     iv.  The ATF's Interpretation of Section 5845(b) and Section 922(o) is Unauthorized by Law and Violates the Ex Post Facto Clause………16

     v.  The District Court Erroneously Held That ATF Adequately Responded to Comments…………………………………...……19

   B. Acting Attorney General Whitaker's Appointment was Illegal…..……..…20

CONCLUSION…………………………………………………..……..21

## TABLE OF AUTHORITIES

**Cases**

*Abramski v. United States*, 573 U.S. 169 (2014) ...................................7, 10

*Calder v. Bull*, 3 U.S. 386 (1798) ............................................. 16, 17, 18

*Chaplaincy of Full Gospel Churches v. United States Navy (In re Navy Chaplaincy)*, 403 U.S. App. D.C. 1, 697 F.3d 1171 (2012)...................................8

*Chevron v. Nat. Res. Def. Council*, 467 U.S. 837 (1984) ................ 1, 2, 7, 9, 10, 12

*Dig. Realty Trust, Inc. v. Somers*, 138 S.Ct. 767 (2018) .........................................10

*Encino Motorcars, LLC v. Navarro*, 136 S.Ct. 2117 (2016) ...................................20

*FCC v. Fox Television Stations, Inc*., 556 U.S. 502 (2009) ....................................19

*Freedom Ordnance Mfg, Inc., v. Brandon*, No. 16-234 2018 WL 7142127 (S.D. Indiana 2018) .......................................................... 5, 12, 14

*FTC v. H.J. Heinz Co*., 345 U.S. App. D.C. 364, 246 F.3d 708 (2001) ...................8

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ...................................18

*Johnson v. United States*, 135 S. Ct. 2551 (2015) ..................................... 11, 13, 14

*League of Women Voters of the United States v. Newby*, 426 U.S. App. D.C. 67, 838 F.3d 1 (2016). ...................................................11

*McDonnell v. United States*, 136 S. Ct. 2355 (2016) ..............................................19

*Mills v. District of Columbia,* 571 F.3d 1304 (2009) .................................................8

*Peugh v. United States*, 569 U.S. 530 (2013) .........................................16

*Sessions v. Dimaya*, 138 S.Ct. 1204 (2018).......................................... 11, 13, 14, 18

*Staples v. United States,* 511 U.S. 600 (1994)..........................................12

*United States v. Apel*, 571 U. S.359, 571 U.S. 359 (2014).....................................10

*Wis. Cent., Ltd. v. United States*, 138 S.Ct. 2067 (2018)...........................................2

**Statutes**

18 U.S.C. § 924(a)(2).................................................................................4, 9

18 U.S.C. § 926(a) ......................................................................................16

18 U.S.C. 921(a)(23).....................................................................................3

18 U.S.C. 922(o) ........................................................... 3, 4, 9, 16, 17, 18

26 U.S.C. § 7801(a)(2)(ii)...........................................................................16

26 U.S.C. § 7805(a) ....................................................................................16

26 U.S.C. §5845(b) ......................................................... 3, 9, 12, 14, 16

28 U.S.C. § 1292(a)(1)..................................................................................2

28 U.S.C. § 1331 ...........................................................................................2

5 U.S.C. § 706 .......................................................................................2, 20

**Other Authorities**

83 Fed. Reg. 66514 (Final Rule)................................................. 6, 16, 17, 18, 19, 20

83 Fed. Reg. 13442 (Notice of Proposed Rulemaking).................................. 4, 5, 19

**Rules**

Fed. R. Civ. P. 65 .........................................................................................2

# GLOSSARY OF TERMS

| | |
|---|---|
| APA | Administrative Procedure Act |
| ATF | Bureau of Alcohol, Tobacco, Firearms and Explosives |
| FR | Final Rule |
| GCA | Gun Control Act |
| NFA | National Firearms Act |
| NPRM | Notice of Proposed Rulemaking |

# INTRODUCTION

This appeal is about an agency action in which a regulation was promulgated which seeks to dispossess hundreds of thousands of Americans from their private property.   The ATF expressly acknowledges that "[b]etween 2008 and 2017, however, ATF also issued classification decisions concluding that other bump-stock-type devices were not machineguns . . . ."  83 Fed.Reg. 66514, 2018 WL 6738526 (Dec. 26, 2018).  It is also undisputed that ordinary law-abiding individuals have spent, during that time period, millions of dollars of the purchase of such items in full reliance on repeated decisions of the ATF.   *Id*. at 66543 ("This final rule is expected to have an impact of over $100 million in the first year of this regulatory action.").

Yet, under the ATF's new rule at issue here, if those Americans don't surrender or destroy their heretofore legal private property, they will be prosecuted as felons.  However, due to political pressure from an incident in Las Vegas at the Mandalay Bay and an instruction from President Trump to ban bump stocks, the ATF has taken an unambiguous congressional statute and has redefined plain text into something congress did not intend when it passed the National Firearms Act ("NFA"), just at ATF itself acknowledged during this time period. Worse, the district court sustained this agency action by applying the *Chevron* doctrine in direct

contravention of controlling Supreme Court precedent that make plain that the *Chevron* doctrine has no place in the construction of criminal statutes.

Justice requires an injunction issue in this case. It requires such because the ATF has no authority to rewrite a congressional statute to fit the current agenda. Congress has expressly denied the ATF the authority to issue regulations with retroactive effect. "Congress alone has the institutional competence, democratic legitimacy, and (most importantly) constitutional authority to revise statutes in light of new social problems and preferences. Until it exercises that power, the people may rely on the original meaning of the written law." *Wis. Cent., Ltd. v. United States*, 138 S.Ct. 2067, 2074 (2018). This is not merely a suggestion to the agencies, but a mandate from our highest court. While individuals may or may not like bump stocks, that "new social problem[ or] preference[]" is properly left to Congress to declare such and not an unelected agency which has stated over and over in the past that is has no authority to regulate bump stocks.

## JURISDICTIONAL STATEMENT

Appellants filed a motion for preliminary injunction in the United States District Court for the District of Columbia pursuant to Fed. R. Civ. P. 65. The district court had jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. § 706. This Court has jurisdiction to review the district court's decision denying a preliminary injunction. 28 U.S.C. § 1292(a)(1).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Whether the District Court erred in denying Appellants' motion for a preliminary injunction seeking to enjoin ATF's Final Rule declaring bump stocks to be machineguns.

## STATEMENT OF THE CASE

Congress enacted the NFA in 1934.  Machinegun is defined as:

> any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

*See* 26 U.S.C. §5845(b).  This definition of a machine is incorporated into the prohibitions imposed by the Gun Control Act, 18 U.S.C. 921(a)(23), incorporates the National Firearms Act's definition of machinegun.  Regulation of machineguns is then addressed in 18 U.S.C. 922(o), under which machineguns, lawfully owned and registered with the federal government prior to May 19, 1986, are lawful to own pursuant to federal law.  18 U.S.C. § 922(o) provides that:

> (1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.
> (2) This subsection does not apply with respect to—
>> (A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or

> (B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect.

Section 922(o) was enacted in 1986 as part of section 102 of the Firearms Owner's Protection Act, P.L. 99-308, 100 Stat. 449 (1986). Section 992(o) is a criminal statute, a violation of which is punishable by imprisonment for up to 10 years. 18 U.S.C. § 924(a)(2). Unlawful possession of a machinegun is thus a serious federal felony.

Since at least 2008, the ATF has ruled at least ten separate times, possibly more, that bump stocks are not machineguns because they do not fit the statutory definition of machinegun. As such, they are not prohibited items because they are not themselves machineguns and do not convert a semiautomatic firearm into a machinegun as defined under federal law.

On March 29, 2018, the ATF published in the Federal Register the Notice of Proposed Rulemaking ("NPRM"). *See* 83 FR 13442. Comments were solicited from the public and the comment period ended on June 27, 2018. In the NPRM, the ATF sought to "clarify that 'bump fire' stocks, slide-fire devices, and devices with certain similar characteristics (bump-stock-type devices) are 'machineguns' as defined by the [NFA and GCA] because such devices allow a shooter of a semiautomatic firearm to initiate a continuous firing cycle with a single pull of the trigger." *Id*. The NPRM stated that these "devices convert an otherwise semiautomatic firearm into a machinegun by functioning as a self-acting or self-

regulating mechanism that harnesses the recoil energy of the [firearm] in a manner that allows the trigger to reset and continue firing without additional physical manipulation of the trigger by the shooter." *Id*.

Shortly before the NPRM was issued, the ATF was in the process of litigating a bump stock type case in the Southern District of Indiana in July 2017. The ATF argued in *Freedom Ordnance Mfg., Inc. v. Thomas E. Brandon, Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives*, Civil Action No. 3:16-cv-243-RLY-MPB. In that case, the ATF argued that bump stocks (of the type at issue here) were not machineguns because bump firing "requires the shooter to manually pull and push the firearm in order for it to continue firing. Generally, the shooter must use both hands – one to push forward and the other to pull rearward – to fire in rapid succession. While the shooter receives an assist from the natural recoil of the weapon to accelerate subsequent discharge, the rapid fire sequence in bump firing is contingent on shooter input in pushing the weapon forward, rather than mechanical input, and is thus not an automatic function of the weapon." That argument was sustained. *See* ATF motion for summary judgment, Dkt. entry 28 at page 22, *filed in Freedom Ordnance Mfg, Inc., v. Brandon*, No. 16-234 2018 WL 7142127 (S.D. Indiana 2018).

However, this plain understanding of how a bump stock type device works and why it is not a machinegun evaporated after the Las Vegas incident and the ATF

was instructed to find a way to ban the devices.  On December 26, 2018, the Appellees published the Final Rule banning bump stocks as machineguns in the Federal Register.  *See* 83 Fed. Reg. 66514 (Dec. 26, 2018) ("Final Rule").  ATF took the definition of machinegun and added a new paragraph:

> **§ 478.11 Meaning of terms.** *Machine gun*. * * * For purposes of this definition, the term "automatically" as it modifies "shoots, is designed to shoot, or can be readily restored to shoot," means functioning as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single function of the trigger; and "single function of the trigger" means a single pull of the trigger and analogous motions.  The term "machine gun" includes a bump-stock-type device, i.e., a device that allows a semi-automatic firearm to shoot more than one shot with a single pull of the trigger by harnessing the recoil energy of the semi-automatic firearm to which it is affixed so that the trigger resets and continues firing without additional physical manipulation of the trigger by the shooter.

In the Final Rule, the position of the Appellees is that the terms "automatically" and "single function of the trigger" are not ambiguous.  In that rule, the Appellees state that "even if those terms are ambiguous, this rule rests on a reasonable construction of them."  *See* 83 FR 66527.  This is a concession that the Appellees do not believe and do not consider the terms ambiguous.  Unable to square the new definitions with the plain text of an almost century-old statute, in order to uphold the Appellees' Final Rule, the district court was forced to find that the term "automatically" and the phrase "single function of the trigger" were ambiguous.  Slip op. at 2.

## PROCEDURAL HISTORY

Appellants filed their Complaint on December 27, 2018 and filed their motion for preliminary injunction on January 18, 2019. Oral argument was held on February 19, 2019. A decision was issued on Appellants' motion for preliminary injunction denying all relief sought on February 25, 2019. A notice of appeal was filed on February 25, 2019.

## SUMMARY OF THE ARGUMENT

The district court should be reversed, and this Court should enter a preliminary injunction. The district court erred in applying the wrong legal analysis. First, the district court expressly relied on deference under *Chevron v. Nat. Res. Def. Council*, 467 U.S. 837 (1984), to sustain the ATF's interpretation. Yet, the NFA and the GCA are criminal statutes and the Supreme Court has expressly held that interpretation of criminal laws is for the courts, not the agencies. The Supreme Court has, indeed, expressly refused to accord any deference to ATF interpretations of Section 922, the very statute at issue here. *Abramski v. United States*, 573 U.S. 169, 191 (2014). As such, the district court's application of *Chevron* deference to deny Appellants' motion for preliminary injunction is a clear error of law and thus an abuse of discretion.

The district court did not reach the other elements of preliminary relief, basing its statutory interpretation ruling exclusively on *Chevron* deference to the ATF. Slip

7

op. at 23-24.  Yet, appellants not only have a substantial likelihood of success on the merits on all elements of preliminary relief, Appellants will suffer irreparable harm on March 26, 2019 when the Final Rule goes into effect.  Preliminary, status quo, relief will not cause harm to other parties and is fully consistent with the public interest.

## STANDARD OF REVIEW

A district court's weighing of the four preliminary injunction factors, along with its ultimate decision to issue or deny such relief, is reviewed for abuse of discretion.  *See Mills v. District of Columbia,* 571 F.3d 1304, 1308 (2009).  "If our review of the district court order 'reveals that it rests on an erroneous premise as to the pertinent law, however, we must examine the decision in light of the legal 'principles we believe proper and sound.' We apply de novo review to the district court's conclusions of law."  *FTC v. H.J. Heinz Co*., 345 U.S. App. D.C. 364, 246 F.3d 708, 713 (2001) (internal citation omitted).  The district court's findings of fact are reviewed for clear error.  *Chaplaincy of Full Gospel Churches v. United States Navy (In re Navy Chaplaincy)*, 403 U.S. App. D.C. 1, 8, 697 F.3d 1171, 1178 (2012).

## ARGUMENT

**A.     The District Court Abused Its Discretion in Denying Appellants' Motion for Preliminary Injunction**

**i.      <u>The District Court Applied the Incorrect Legal Analysis</u>**

8

While not appearing <u>once</u> in the briefs, and despite deference being disclaimed in the briefing,[2] and despite during the oral argument when the Appellants stated that the Appellees were due no *Chevron* deference, the district court nonetheless applied the *Chevron* framework to the Final Rule. Specifically, the court held that "[m]ost of the plaintiffs' administrative law challenges are foreclosed by the *Chevron* doctrine, which permits an agency to reasonably define undefined statutory terms." Slip op. at 2. That express reliance on *Chevron* deference is then repeated through the court's opinion in the court's construction of the term "machinegun" and the court's express reliance on the ATF's construction. Slip op. at 13-14. Indeed, the court faulted plaintiffs' arguments as "premised on a misunderstanding of the *Chevron* doctrine." *Id*. at 17. The court then went on to apply *Chevron's* familiar "two step" analysis, found that the meaning of "machinegun" was ambiguous" and then sustained the ATF's rule as "reasonable" under *Chevron*. *Id*. at 19-21.

The district court's reliance on *Chevron* deference is manifest error. As explained, Section 5845(b) is incorporated expressly into Section 922(o) and Section 922(o) is indisputably a criminal statute, a violation of which is punishable by imprisonment for up to 10 years. See 18 U.S.C. § 924(a)(2). The definition of a machinegun is thus a matter of criminal law. The Supreme Court has made clear, "[t]he critical point is that criminal laws are for courts, not for the Government, to

_____

[2] *See* Docket No. 16, p. 20.

9

construe." *Abramski v. United States*, 573 U.S. 169, 191 (2014). *See also United States v. Apel*, 571 U. S.359, 571 U.S. 359, 369... (2014) ('[W]e have never held that the Government's reading of a criminal statute is entitled to any deference'). Under this principle, the "ATF's old position no more relevant than its current one — which is to say, not relevant at all." *Abramski*, 573 U.S. at 191. Just last year, the Supreme Court held "[t]he statute's unambiguous ... definition, in short, precludes the [agency] from more expansively interpreting that term." *Dig. Realty Trust, Inc. v. Somers*, 138 S.Ct. 767, 782 (2018) (emphasis added). *Chevron* is thus utterly irrelevant to this case.

The district court's reliance on *Chevron* is inexplicable. After the decision was issued by the district court, these Appellees, in separate cases in other jurisdictions, filed Notices of Supplemental Authority which invoke the Supreme Court's decision in *United States v. Apel*, 571 U.S. 359 (2014) and state "Defendants have not contended that the deference afforded under *Chevron v. Nat. Res. Def. Council*, 467 U.S. 837 (1984) applies in this action. *See Apel*, 571 U.S. at 369 (the Supreme Court has "never held that the Government's reading of a criminal statute is entitled to any deference").[3] In the Appellees' Opposition, "deference" is found only twice, and *Chevron* is not even given a passing mention. Both instances are in the criminal law

---

[3] *See Gun Owners of America, Inc., et al. v. William P. Barr, et al*; Civil Action No. 1:18-cv-01429-PLM-RSK; Docket No. 38.

10

context where the agency is not entitled to deference.  In any event, the district court held that the ATF definition of machinegun was entitled to *Chevron* deference because the terms included in the definition of machinegun were themselves ambiguous.

Indeed, if the terms are ambiguous, then that ambiguity opens up these provisions to serious attack for vagueness under the Due Process Clause of the Fifth Amendment.  *See Sessions v. Dimaya*, 138 S.Ct. 1204, 1212 (2018) ("'the prohibition of vagueness in criminal statutes…is 'essential' of due process, required by both 'ordinary notions of fair play and the settled rules of law.'") quoting *Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015).  This is, no doubt, the reason that the government has never claimed that the provisions are ambiguous.

In short, because the NFA and GCA are criminal laws, the Appellees cannot expand the statute to fit its agenda and are not due any deference in this recently proposed definition of "automatically" and "single function of the trigger." Irreparable harm was conceded, as the dissent in the Motion to Expedite acknowledges. "As a preliminary injunction requires only a likelihood of irreparable injury, *see Winter*, 555 U.S. at 22, (2008), Damocles's sword does not have to actually fall on all [plaintiffs] before the court will issue an injunction." *League of Women Voters of the United States v. Newby*, 426 U.S. App. D.C. 67, 74-75, 838

F.3d 1, 8-9 (2016). However, the district court did not venture beyond the likelihood of success on the merits in the four factor test.

### ii. The District Court Incorrectly Found That Certain Terms Were Ambiguous

At issue is the reach of that part of Section 5845(b) which defines a machinegun to mean a gun that fires "automatically more than one shot, without manual reloading, by a single function of the trigger." Automatically means that the weapon "fires repeatedly with a single pull of the trigger." *Staples v. United States,* 511 U.S. 600, 602 n. 1 (1994). As explained to the district court, the ATF itself has properly argued that that phrase does not include the bump stocks of the type at issue here because "[w]hile the shooter receives an assist from the natural recoil of the weapon to accelerate subsequent discharge, the rapid fire sequence in bump firing is contingent on shooter input in pushing the weapon forward, rather than mechanical input, and *is thus not an automatic function of the weapon*." (P.Motion for PI at 5, quoting ATF motion for summary judgment, Dkt. entry 28 at page 22, filed in *Freedom Ordnance Mfg*. (Emphasis added).

The District Court disregarded that definition, but in doing so, made no effort to make a *de novo* interpretation of the statutory language. Rather, it simply held that the language was ambiguous and thus open to a binding interpretation by the ATF under *Chevron*. But even setting aside the court's erroneous reliance on *Chevron*, the district court erred in finding that this statute was ambiguous. The

12

court should have simply applied the ATF's prior interpretation, examined the remaining elements for preliminary relief and granted the motion for a preliminary injunction.

First, the district court analyzed whether "as the plaintiffs argue, 'single function of the trigger' means a mechanical act of the trigger, or whether, as ATF argued in the rule, a 'single function of the trigger' means a single pull of the trigger from the perspective of the shooter." Slip op. at 20. Because the district court adopted Appellees' version, the statute has now been completely rewritten to focus on the trigger's function "from the perspective of the shooter." This new prospective upends what Congress intended in 1934 when it drafted the NFA and defined machinegun from the "prospective" of the firearm itself.

The district court similarly erred in finding that ATF "acted reasonably in defining the phrase 'single function of the trigger' to mean a 'single pull of the trigger and analogous motions." Slip op. at 21. But "analogous motions" is not in the statutory language which focuses on "automatic" fire from "single function of the trigger." In fact, the ATF made the statute ambiguous now by including "analogous motions" in its new definition which is itself not further defined. It is unnecessary surplusage which arguably makes the statute unconstitutionally vague under the *Dimaya* and *Johnson*.

The district court went one step further and stated that "[b]ecause the statute does not specify how much manual input is too much, the Court concludes that the term 'automatically' is ambiguous, with or without the gloss added by the rule." Slip op. at 21. But the district court is incorrect in reading the statute to require "how much manual input is too much." Section 5845(b) plainly states: a machinegun is "any weapon which shoots ... automatically ... **by a single function of the trigger**." (Emphasis added). A "single function of the trigger" is the starting and the ending point of just how much human input is allowable to still render a firearm "automatic." However, given the district court's finding, the redefined term is *still* ambiguous, even with the gloss, and thus fatally vague under *Dimaya* and *Johnson*.

In contrast, a "single function of the trigger" is not ambiguous under the preexisting test, as articulated by the ATF in *Freedom Ordnance*. Function incorporates all the different ways a trigger may be activated. And no case has found that one should look at what the shooter is doing instead of the rifle. The machinegun is the item that the definition applies to and not the shooter. Shoehorning the definition into whether the shooter harnesses recoil energy and discounting the multiple human manual inputs in the firing of the weapon demonstrates the Final Rule's arbitrariness.

### iii. The District Court Clearly Erred in its Factual Findings

14

In its opinion, the District court claimed that the "[p]arties do not dispute the basic mechanics of standard bump stock devices." Slip op. at 7. This is incorrect. Instead, Appellants did dispute the basic mechanics of bump stock devices: "… the shooter must manipulate the trigger to make the firearm continue to fire. If, as stated in the Final Rule, there was no 'additional physical manipulation of the trigger by the shooter', the firearm would simply not fire any additional rounds." *See* Memorandum in Support, Docket No. 5-1 at p. 16. "A bump stock has no 'harnessing' device. It has no internal spring." *Id.* at p. 15. "Nowhere in a bump stock device does it 'harness' recoil energy and the trigger absolutely requires additional 'physical manipulation' by the shooter in order for it to continue to fire." *See* Reply, Docket No. 18 at p. 6. Despite Appellants disputing both the Final Rule and Appellees' arguments in district court, the district court nonetheless determined that both parties were apparently in agreement as to how bump stocks operate.

Further, the district court found that the ATF's differing treatment of binary triggers and bump stocks was fine. Slip op. at 29-30. Even though the Appellees admit that the binary trigger "discharge one round when the shooter pulls the trigger and another when the shooter release the trigger", the district court was okay with ATF's logic of a binary trigger requiring "two functions of the trigger – a pull and a release – to discharge multiple rounds." This application defies logic because once a user "pulls" the trigger, the user is only left with one option: releasing the trigger.

15

In the case of a binary trigger, that would cause another round to be fired.  Yet, the ATF classifies these separately as not-a-machinegun.   In short, the ATF's definition is self-contradictory as well as contrary to the language of the statute.

### iv.    The ATF's Interpretation of Section 5845(b) and Section 922(o) Is Unauthorized by Law and Violates the Ex Post Facto Clause

The ATF has no retroactive rulemaking authority. As statutory authorization, the rule cites 18 U.S.C. § 926(a); 26 U.S.C. § 7801(a)(2)(ii), § 7805(a).  83 Fed. Reg. at 66515.   None of these statutory provisions authorize retroactive rules or regulations with respect to the subject matter addressed in this docket number, viz., the definition of machinegun and machine parts as otherwise regulated by 18 U.S.C. § 922(o), and as defined by 26 U.S.C. § 5845(b). Indeed, with few exceptions not applicable here, Section 7805(b) flatly bans retroactive rulemaking.   Retroactive application of criminal statutes is also expressly barred by the Ex Post Facto Clause of the Constitution. Article 1, Section 9, Clause 3; *Calder v. Bull*, 3 U.S. 386, 390 (1798); *Peugh v. United States*, 569 U.S. 530 (2013).

As noted above, under Section 922(o), it is illegal to possess any machinegun that was not manufactured prior to the enactment of the Firearms Owners Protection Act of 1986.  It is undisputed that the "bump stocks" at issue here were all manufactured after 2008, when the ATF began issuing authorization letters to manufacturers that certain types of bump stocks were not machineguns.  83 Fed.

Reg. at 66516-18 (referring to "ten letter rulings").  It is likewise undisputed that the new rule purports to define Section 5845(b) and Section 922(o) to include these very same devices as "machineguns," thereby making clear that, because these devices were all manufactured after 1986, all are now prohibited by Section 922(o).

As the ATF states, "[t]he rule clarifies the regulatory definition of 'machinegun' to include bump-stock-type devices, and, therefore, subjects them to the restrictions imposed by the NFA and GCA.  As 18 U.S.C. 922(o), with limited exceptions, prohibits the possession of machineguns that were not lawfully possessed before the effective date of the statute, current possessors of bump-stock-type devices will be obligated to cease possessing these devices."  83 Fed. Reg. at 66520.  Under this reasoning, the ATF found that grandfathering existing devices would be legally impossible.  (*Id*. at 66535-36). *See also id*. at 66544 ("Amnesty or "grandfathering" (02) This alternative was rejected because since the passage of 18 U.S.C. 922(o), amnesty registration of machineguns is not legally permissible.").  Destruction is therefore *required* by the ATF rule.  (*Id*. at 66529).

Under ATF's reasoning, any bump stock made after 1986 has *always* been a machinegun and thus has *always* been banned.  The retroactive reach of the rule to illegalize the very same devices made and sold during the 2008 to 2017 time period pursuant to the ATF's "ten letter rulings" is undeniable.  In response, the ATF dodges the question from retroactivity to one of enforcement discretion.

Specifically, the ATF first acknowledges the test set out in *Calder*, viz., that the ban Ex Post Facto laws applies to any law that "'makes an action, done before the passing of the law, and which was innocent when done, criminal.'" 83 Fed. Reg. at 66525, quoting *Calder*, 3 U.S. at 390.  But ATF then states, in an *ipse dixit*, that this test does not apply because the rule "makes clear that individuals are subject to criminal liability only for possessing bump-stock-type devices after the effective date of regulation, not for possession before that date." *Id*.

That statement is a *non sequitur*.  A violation of Section 922(o) is not dependent on an agency promise to withhold *enforcement* until a date certain in the future.  Congress, not the agency, establishes the bounds of criminal law and Congress has not made these devices illegal, prospectively or otherwise.  As the Supreme Court recently explained, the void-for-vagueness doctrine "is a corollary of the separation of powers—requiring that Congress, rather than the executive or judicial branch, define what conduct is sanctionable and what is not." *Dimaya*, 138 S. Ct. at 1212.  This doctrine ensures that the legislature, not prosecutors or courts, determine the scope of the criminal law. *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972).

Here, in applying its rule retroactively to existing devices that it indisputably previously allowed, the ATF "makes an action, done before the passing of the law, and which was innocent when done, criminal." *Calder*, 3 U.S. at 390.  It is now

18

construing the statute to include conduct that it had previously viewed as innocent. By any measure, applying the statute in this way is retroactive and thus unauthorized by the enabling statutory authority that governs ATF rulemaking. The retroactive reach of the rule cannot be avoided by an agency promise to forego *enforcement* in the exercise of prosecutorial discretion. While a prosecutor has undeniable discretion, that discretion cannot be used to change the meaning of criminal law. *See McDonnell v. United States*, 136 S. Ct. 2355, 2373–74 (2016) (noting that "we cannot construe a criminal statute on the assumption that the Government will 'use it responsibly'") (citation omitted). The rule thus violates both the statutory ban on retroactive rulemaking and the Ex Post Facto Clause.

### v. The District Court Erroneously Held That ATF Adequately Responded to Comments

The district court held that the ATF adequately responded to comments. Slip op. 22. That is incorrect. In the context of ATF's prior interpretations, one commenter, Maryland Shall Issue[4], for example, made a point of stressing the ATF must take into account the reliance interests its prior practice had generated and that such reliance interests place a heavy burden on the ATF to explain fully and justify its change of its prior interpretation. *FCC v. Fox Television Stations, Inc*., 556 U.S. 502, 515 (2009). The agency has failed to do so here, stating merely the new rule

---

[4] Maryland Shall Issue's comment was adopted by reference in the comment submitted on behalf of Appellant Scott Heuman.

adopts "a better legal and practical interpretation of 'function'" of the trigger. (NPRM at 19).  The agency essentially repeated that conclusionary declaration in the final rule.  83 Fed. Reg. at 65514, 66527.  Slip op. at 26.  The ATF never addressed reliance interests in the slightest in the final rule. That failure to address those interests makes the rule arbitrary under the 5 U.S.C. § 706. *See Encino Motorcars, LLC v. Navarro*, 136 S.Ct. 2117, 2126-27 (2016) ("focusing on reliance interests, noting conclusory statements do not suffice").

That reliance interest is huge.  In its proposed rule, the ATF estimated that there are as many as 520,000 bump stocks devices currently in possession (Preamble at 33), with a value of up to $96,242,750. (*Id*. at 34). Yet, instead of addressing the enormity of these interests, it merely cites these burdens in conducting a cost-benefit analysis under Executive Orders 12866, 13563, and 13771. The cost-benefit analysis under these Orders is obviously not the same as assessing reliance interests. Whatever the merits of a prospective ban on future commercial sales or future manufacture, the ATF has not even attempted to justify the destruction of $96.2 million worth of existing private property (all of which was manufactured and acquired in legitimate reliance on prior agency rulings) as an appropriate response to a single criminal misuse of a bump stock.

**B.      Acting Attorney General Whitaker's Appointment was Illegal**

20

Appellants preserve the argument raised in the district court that Whitaker's appointment was illegal and adopts and incorporates by reference the briefing on this issue by Firearms Policy Coalition, Inc. in the consolidated case.

## CONCLUSION

For the foregoing reasons, this Court should reverse the judgment of the district court for the District of Columbia and grant Appellants' motion for a preliminary injunction and maintain the status quo before the rule goes into effect and hundreds of thousands of Americans will either become instant felons or must surrender lawfully obtained private property.

March 3, 2019

Respectfully submitted,

/s/ Stephen D. Stamboulieh
STEPHEN D. STAMBOULIEH
STAMBOULIEH LAW, PLLC
P.O. Box 4008
Madison, MS  39130
(601) 852-3440
stephen@sdslaw.us
*Counsel for Appellants David Codrea,
Scott Heuman and Owen Monroe*

ALAN ALEXANDER BECK
LAW OFFICE OF ALAN BECK
2692 Harcourt Drive
San Diego, CA  92123
(619) 905-9105
Alan.alexander.beck@gmail.com
*Application to be submitted

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

I hereby certify that:

1.  This brief complies with requirements of Fed. R. App. P. 32(a)(7)(B) because it contains <u>5,044</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14 Point Times New Roman.


*/s/Stephen D. Stamboulieh*
Stephen D. Stamboulieh
Stamboulieh Law, PLLC

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
## 𝔣𝔬𝔯 𝔱𝔥𝔢 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔬𝔣 𝔆𝔬𝔩𝔲𝔪𝔟𝔦𝔞 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

*Damien Guedes, et al v. ATF, et al.*, No. 19-5042, -5043, -5044

## CERTIFICATE OF SERVICE

I, Stephen D. Stamboulieh, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

On **March 3, 2019,** I electronically filed the foregoing **Brief** with the Clerk of Court using the CM/ECF System, which will serve, via e-mail notice of such filing, to any of the following counsel registered as CM/ECF users:

Joshua Prince
Adam Kraut
CIVIL RIGHTS DEFENSE FIRM, P.C.
Bechtelsville, PA 19505
(610) 845-3803
Joshua@princelaw.com
AKraut@princelaw.com
*Attorneys for Plaintiffs-Appellants*
*Damien Guedes, Shane Roden, Firearms*
*Policy Foundation, Madison Society*
*Foundation, Inc., and Florida Carry, Inc.*

Hashim M. Mooppan
Scott R. McIntosh
Abby Christine Wright
U.S. Department of Justice,
Civil Division, Appellate Staff
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 514-2000
abby.wright@usdoj.gov
scott.mcintosh@usdoj.gov
hashim.mooppan@usdoj.gov
*Counsel for Appellees ATF, et al.*

Thomas C. Goldstein
Daniel Woofter
GOLDSTEIN & RUSSELL, P.C.
7475 Wisconsin Avenue, Suite 850
Bethesda, MD 20814
(202) 362-0636
TGoldstein@goldsteinrussell.com
DHWoofter@goldsteinrussell.com
*Attorneys for Plaintiff-Appellant*
*Firearms Policy Coalition, Inc.*

Unless otherwise noted, the required paper copies will be filed with the Court by 4pm on March 4, 2019.

_____

*/s/ Stephen D. Stamboulieh*
Counsel for Appellants

23