**ORAL ARGUMENT SCHEDULED FOR MARCH 22, 2019**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

### No. 19-5043 (consolidated with Nos. 19-5042 & 19-5044)

FIREARMS POLICY COALITION, INC., CA 18-3083,
*Plaintiff-Appellant*,

DAMIEN GUEDES; FIREARMS POLICY FOUNDATION; MADISON SOCIETY
FOUNDATION, INC.; SHANE RODEN; FLORIDA CARRY, INC.,
*Plaintiffs-Appellees*,

v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES;
WILLIAM P. BARR, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE
UNITED STATES; THOMAS E. BRANDON, IN HIS OFFICIAL CAPACITY AS
ACTING DIRECTOR OF THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND
EXPLOSIVES; UNITED STATES OF AMERICA,
*Defendants-Appellees*.

On Appeal from the United States District Court for the District of
Columbia (Nos. 1:18-cv-02988-DLF, 1:18-cv-03086-DLF)

### BRIEF OF *AMICI CURIAE* CITIZENS FOR RESPONSIBILITY AND
### ETHICS IN WASHINGTON AND FORMER GOVERNMENT ETHICS
### OFFICIALS

Conor M. Shaw
cshaw@citizensforethics.org
Nikhel S. Sus
nsus@citizensforethics.org
Citizens for Responsibility and Ethics
in Washington
1101 K St. NW, Suite 201
Washington, D.C. 20005
T: (202) 408-5565;
F: (202) 588-5020

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

All parties and intervenors appearing before the district court and this Court are listed in the Brief of Appellant Firearms Policy Coalition, Inc. The Cato Institute is appearing as an *amicus curiae* in support of Appellants in related case number 19-5042. Morton Rosenberg has sought leave to appear as an *amicus curiae* in support of Plaintiff-Appellant in case number 19-5042.

In addition, the following *amici* are seeking leave to make an appearance in case no. 19-5043:

- *Amicus* Citizens for Responsibility and Ethics in Washington ("CREW") is a nonprofit, nonpartisan corporation organized under section 501(c)(3) of the Internal Revenue Code. Through a combined approach of research, advocacy, public education, and litigation, CREW seeks to protect the rights of citizens to be informed about the activities of government officials and to ensure the integrity of those officials. To that end, CREW routinely submits letters and administrative complaints concerning potential ethical violations by public officials and, if necessary, takes legal action to redress those violations.

- *Amicus* Virginia Canter is Chief Ethics Counsel at CREW. Ms. Canter previously served as associate White House counsel for ethics to Presidents Barack Obama and Bill Clinton; former senior ethics counsel at the

Department of the Treasury; and assistant ethics counsel at the Securities and Exchange Commission.

- *Amicus* Don Fox is a Senior Instructor in Leadership Education at Culver Academies. Mr. Fox previously served as General Counsel to the U.S. Office of Government Ethics (OGE); Acting Director of OGE; and a career ethics official at the Department of the Air Force.

- *Amicus* Marilyn Glynn served as General Counsel to OGE and Acting Director of OGE. Ms. Glynn is also a former member of the President's Council on Integrity and Efficiency.

- *Amicus* Karen Kucik served as an attorney-advisor at the Justice Management Division of DOJ; as an ethics attorney at the Department of Commerce; as an attorney at the Office of the White House Counsel; and as an attorney at Department of Health & Human Services.

- *Amicus* Professor Richard Painter is a member of CREW's board. Mr. Painter served as associate White House counsel to President George W. Bush.

- *Amicus* Lawrence Reynolds served as Assistant General Counsel for the Department of Housing and Urban Development with responsibility for ethics. He also served as a career ethics attorney at the Department of Labor.

- *Amicus* Trip Rothschild served as Associate General Counsel to the Nuclear Regulatory Commission.

References to the ruling at issue appears in the Brief for Appellant Firearms Policy Coalition, Inc.  References to the related case appear in the Brief for Appellant Firearms Policy Coalition, Inc.  This case was not previously before this Court.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to D.C. Circuit Rule 26.1, *Amicus* Citizens for Responsibility and Ethics in Washington certifies that no publicly held corporation has a 10 percent or greater ownership interest in it.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............. i

CORPORATE DISCLOSURE STATEMENT ....................................... iv

TABLE OF AUTHORITIES ................................................. vi

GLOSSARY ............................................................ viii

STATUTES AND REGULATIONS ............................................. ix

INTERESTS OF *AMICI CURIAE* ...........................................1

SUMMARY OF ARGUMENT ..................................................2

ARGUMENT .............................................................4

  I.  The Attorney General Succession Act and the Appointments Clause
     Create Essential Checks on Abuses of the President's Appointment Power...6

  II.  The President's Unilateral Appointment of Mr. Whitaker Was a Worst-
     Case Scenario That the Attorney General Succession Act and
     Appointments Clause Were Designed to Prevent. ........................10

    A.  President Trump Faced Ongoing DOJ Investigations Implicating Him,
       His Associates, His Business, and His Presidential Campaign When He
       Appointed Mr. Whitaker Acting Attorney General .................11

    B.  Prior to His Purported Appointment, Mr. Whitaker Had Demonstrated
       Bias and Conflicts with Respect to DOJ Investigations Involving the
       President. ......................................................13

    C.  President Trump's Purported Appointment of Mr. Whitaker Raised
       Concerns of Potential Interference with the Special Counsel and SDNY
       Investigations...................................................19

    D.  After Mr. Whitaker Was Appointed, President Trump Reportedly Sought
       His Help to Control the SDNY Investigation.......................22

CONCLUSION ..........................................................23

CERTIFICATE OF COMPLIANCE ...........................................25

CERTIFICATE OF SERVICE ..............................................26

# TABLE OF AUTHORITIES

**Cases**

*Edmond v. United States*, 520 U.S. 651 (1997) ........................................................7

*Weiss v. United States*, 510 U.S. 163 (1994) ............................................... 7, 8, 23

**Statutes**

28 U.S.C § 515 ...........................................................................................................9

28 U.S.C. § 508 ............................................................................................... 2, 5, 6

28 U.S.C. § 509 ...........................................................................................................9

5 U.S.C. § 3347(a)(1) ...............................................................................................5

**Other Authorities**

DOJ Office of Legal Counsel Memorandum, Nov. 14, 2018, *available at*
   https://bit.ly/2qS6bdm ......................................................................................10

*The Federalist No. 76* ................................................................................. 7, 8, 9, 23

**Rules**

Fed. R. App. P. 29(a)(4)(E) .....................................................................................1

**Regulations**

28 C.F.R. § 45.2 .......................................................................................................18

28 C.F.R. § 600 .....................................................................................................9, 11

5 C.F.R. § 2635.101(14) ..........................................................................................18

5 C.F.R. § 2635.101(b)(8) ........................................................................................18

Bump-Stock-Type Devices, 83 Fed. Reg. 66,514 (Dec. 26, 2018) ..........................6

**Constitutional Provisions**

U.S. Const. art. II, § 2 cl.2 ........................................................................2

# GLOSSARY

| | |
|---|---|
| AG | Attorney General |
| Coalition | Firearms Policy Coalition, Inc. |
| DOJ | Department of Justice |
| GAO | Government Accountability Office |
| OLC | Office of Legal Counsel |
| Vacancies Act | Federal Vacancies Reform Act |

## STATUTES AND REGULATIONS

All applicable statutes and regulations are contained in the Brief for Appellants.

## INTERESTS OF *AMICI CURIAE*[1]

*Amici* include seven former government ethics officials with decades of experience applying ethics laws and regulations under administrations of both parties. Throughout their service, these officials have advised agencies about ethical considerations generally, and provided specific advice concerning compliance with federal ethics statutes, the Standards of Conduct for Employees of the Executive Branch, and agency-specific ethics regulations. They have also provided such advice to Presidential nominees undergoing Senate confirmation.

*Amicus* Citizens for Responsibility and Ethics in Washington ("CREW") is a nonprofit, nonpartisan corporation organized under section 501(c)(3) of the Internal Revenue Code. Through a combined approach of research, advocacy, public education, and litigation, CREW seeks to protect the rights of citizens to be informed about the activities of government officials and to ensure the integrity of those officials. To that end, CREW routinely submits letters and administrative complaints concerning potential ethical violations by public officials and, if necessary, takes legal action to redress those violations.

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), *amici* affirm that no counsel for a party authored this brief in whole or in part, no party or counsel for a party contributed money that was intended to fund preparing or submitting this brief, and no person other than *amici* or their counsel contributed money that was intended to fund preparing or submitting this brief.

*Amici* submit this brief to highlight significant ethical concerns posed by Matthew Whitaker's purported appointment and service as Acting Attorney General, which vividly demonstrate the need for compliance with the Attorney General Succession Act ("AG Succession Act"), 28 U.S.C. § 508, and the Constitution's Appointments Clause, U.S. Const. art. II, § 2 cl.2.

## SUMMARY OF ARGUMENT

No case could demonstrate more clearly the need for our nation's top law enforcement officer to have undergone the scrutiny of Senate confirmation than President Trump's purported appointment of Matthew Whitaker as Acting Attorney General. At the time of the appointment, the President faced (and continues to face) at least two DOJ investigations of serious misconduct in which he is personally implicated: one by Special Counsel Mueller and another by the U.S. Attorney's Office for the Southern District of New York ("SDNY"). President Trump has made clear that he views the Special Counsel's investigation as an illegitimate "witch hunt" and that he considers investigations of his finances, business, and campaign for other offenses also to be inappropriate. President Trump has also taken concrete actions apparently intended to interfere in these investigations, including by lobbying former Attorney General Jeff Sessions not to recuse from the Special Counsel's investigation, by firing former Federal Bureau of Investigation ("FBI")

Director James Comey, and by directing the firing of Special Counsel Robert Mueller (before apparently rescinding the command).

Against this backdrop, President Trump fired Attorney General Sessions and replaced him with Acting Attorney General Whitaker, a non-Senate confirmed GS-15 employee, who fell far outside the statutory line of succession. Prior to serving at DOJ, Mr. Whitaker made public statements criticizing the Special Counsel's investigation in incendiary terms and vigorously disputing the President's own potential criminal liability. In addition to his public statements demonstrating extreme bias and prejudgment as to the Special Counsel's investigation, Mr. Whitaker has a close personal and political relationship with a key witness in the investigation, Sam Clovis.

Each of these issues would have been thoroughly examined had Mr. Whitaker gone through Senate confirmation. But the President bypassed that process altogether by naming Mr. Whitaker Acting Attorney General and setting in motion what some worried would be a "slow-motion Saturday Night massacre" leading to the curtailment of the investigations facing the President.[2] Those worries came dangerously close to fruition when, following Mr. Whitaker's appointment, the

---

[2] *See* Todd Purdum, The Latest Drama in Trump's Slow-Motion Saturday Night Massacre, *The Atlantic*, Nov. 7, 2018, *available at* https://bit.ly/2OAc7ky; Walter Shaub Jr., This Is The Saturday Night Massacre, *Slate*, Nov. 14, 2018, *available at* https://bit.ly/2PsM97U.

President reportedly asked Mr. Whitaker if U.S. Attorney Geoffrey S. Berman could be put in charge of the SDNY investigation, even though Mr. Berman had already recused from the matter.[3]

Fortunately, as Plaintiff-appellant Firearms Policy Coalition, Inc. ("Coalition") correctly argues in this case, the AG Succession Act forbids such maneuvering by the President, requiring instead that even an Acting Attorney General be a Senate-confirmed official, absent exigent circumstances not presented here. A contrary conclusion would have unconscionable results: a president facing a criminal investigation could fire the head of the agency investigating him, and unilaterally replace him with a political loyalist who has not faced the scrutiny of Senate confirmation, is hopelessly conflicted in multiple respects, and could subvert the investigation. This is a situation that the AG Succession Act and the Appointments Clause are designed to prevent.

## ARGUMENT

The district court erred in holding that the Coalition was unlikely to succeed on the merits of its claim that Mr. Whitaker's purported appointment as Acting

---

[3] *See* Mark Mazzetti, Maggie Haberman, Nicholas Fandos, and Michael S. Schmidt, Intimidation, Pressure and Humiliation: Inside Trump's Two-Year War on the Investigations Encircling Him, *New York Times*, Feb. 19, 2019, *available at* https://nyti.ms/2XenpjV; Laura Jarrett and David Shortell, Top Manhattan prosecutor recused from Cohen investigation before search warrant issued, *CNN*, Apr. 10, 2018, *available at* https://cnn.it/2v3eOqB.

Attorney General was unlawful.  *See* Coalition's Opening Br. at 6-31.  As the Coalition explains, although the Vacancies Act permits the President to temporarily authorize an acting official to perform the functions of almost every Senate-confirmed officer, it does not apply where "a statutory provision expressly . . . designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity."  5 U.S.C. § 3347(a)(1). *See* Coalition's Opening Br. at 7-8.  In the case of the attorney general, Congress provided in the AG Succession Act that when there is a vacancy in the office of the Attorney General, "the Deputy Attorney General may exercise all the duties of that office." 28 U.S.C. § 508.  As the Coalition further explains, this court should construe the AG Succession Act to avoid serious constitutional questions raised by the district court's interpretation of the statute.

*Amici* do not repeat these arguments; instead, they explain why they matter, especially at this critical juncture of the Trump presidency.  The role that the Constitution grants the Senate in giving advice and consent is a non-negotiable component of our founding charter.  The unlawful appointment of Matthew Whitaker was no small matter; rather, it presented a direct threat to the rule of law in our republic.  In this live controversy, the Court has an opportunity to protect against future attempts by this and other Presidents to interfere with DOJ investigations into their misconduct.

To be clear, *amici*'s position should not be construed as questioning the wisdom of DOJ's Final Rule regulating certain so-called "bump stock" devices on firearms, Bump-Stock-Type Devices, 83 Fed. Reg. 66,514, 66,554 (Dec. 26, 2018), or as supporting other challenges to the rule raised in this litigation under the National Firearms Act of 1934 and the Firearm Owners Protection Act of 1986. *Amici* share the policy goal of reducing deaths and injuries caused by gun violence. For that very reason, *amici* seek to ensure that DOJ's Final Rule is on the firmest legal footing, including promulgation by a lawfully appointed attorney general.

## I.     The Attorney General Succession Act and the Appointments Clause Create Essential Checks on Abuses of the President's Appointment Power.

Both the AG Succession Act and the Constitution's Appointments Clause require that the Acting Attorney General be, at minimum, a sitting Senate-confirmed officer, absent exigent circumstances not presented here.  *See* Coalition's Opening Br. at 6-31.  The AG Succession Act further requires that a vacancy in the Office of the Attorney General be filled by not just any Senate-confirmed officer, but by one of the specific DOJ officers enumerated in the statute.  28 U.S.C. § 508.  This statute reflects Congress's judgment that, at all times, there should be a line of DOJ officers ready to serve as Acting Attorney General who have already faced the rigors of Senate confirmation.

6

Requiring that the Acting Attorney General be a Senate-confirmed officer is a critical institutional check on the President.  Senate confirmation serves to "curb Executive abuses of the appointment power," and "'promote a judicious choice of [persons] for filling the offices of the union.'"  *Edmond v. United States*, 520 U.S. 651, 659 (1997) (quoting *The Federalist No. 76*, at 386-387 (A. Hamilton) (M. Beloff ed., 1986)).  In *The Federalist No. 76*, which "contain[s] the most thorough contemporary justification for the method of appointing principal officers that the Framers adopted," *Weiss v. United States*, 510 U.S. 163, 185 n.1 (1994), Alexander Hamilton wrote that "'the necessity of [the Senate's] concurrence . . . would be an excellent check upon a spirit of favoritism in the President, and would tend greatly to prevent the appointment of unfit characters from State prejudice, from family connection, from personal attachment, or from a view to popularity,'" *The Federalist No. 76* (A. Hamilton).

If the President could unilaterally appoint principal officers, Hamilton observed, he "would be governed much more by his private inclinations and interests, than when he was bound to submit the propriety of his choice to the discussion and determination of a different and independent body, and that body an entire branch of the legislature."  *Id.*  Requiring Senate confirmation leads to "[t]he possibility of rejection," which, in turn, provides a "strong motive to [take] care in proposing" nominees.  *Id.*  The President "would be both ashamed and afraid to bring

forward, for the most distinguished or lucrative stations, candidates who had no other merit than . . . of being in some way or other personally allied to him, or of possessing the necessary insignificance and pliancy to render them the obsequious instruments of his pleasure." *Id.*; *see also Weiss*, 510 U.S. at 184 ("the Framers . . . recognized that lodging the appointment power in the President alone would pose . . . the risk of 'a[n] incautious or corrupt nomination.'") (quoting 2 M. Farrand, *Records of the Federal Convention of 1787*, 43 (rev. ed. 1937) (J. Madison)).

In practice, the Senate confirmation process has proven to be precisely the "excellent check" that the Framers intended.  It entails vetting by the White House; a background investigation by the FBI; a review of financial records by the U.S. Office of Government Ethics or other designated ethics official; completion of several reports, including the White House Personal Data Statement, the Public Financial Disclosure Report (OGE 278e), the Questionnaire for National Security Positions (SF-86), and Senate committee questionnaires; interviews with Senators; and, ultimately, a public Senate hearing.[4]  And the pressures of this process are more than theoretical: there are numerous historical examples of cabinet nominees,

---

[4] *See* Partnership for Public Service, Center for Presidential Transition, *Presidential Transition Guide*, at 81-89 (Jan. 2018, 3d ed.), *available at* https://bit.ly/2zcAznk.

including for Attorney General, whose nominations were withdrawn due to revelations made during the confirmation process.[5]

The necessity of Senate confirmation is particularly acute when it comes to the Attorney General.  As the nation's chief law enforcement officer, the Attorney General has broad authority over federal criminal matters.  *See* 28 U.S.C. §§ 509, 515.  This includes the power, absent recusal, to oversee a criminal investigation of the President himself.  *See* 28 C.F.R. § 600.  Without the institutional check of Senate confirmation, the President would be free to fire an Attorney General who is investigating him and unilaterally appoint an Acting Attorney General who will shut down the investigation and otherwise do the President's bidding.  It is therefore essential that whoever serves as Attorney General, however temporarily, is a person of "[]fit character[]" who is not merely a "plian[t] . . . personal[] all[y] or "obsequious instrument[]" of the President.  *See The Federalist No. 76* (A. Hamilton).  The process for making this evaluation, of course, is Senate confirmation.

---

[5] Examples include President Clinton's nomination of Zoe Baird as Attorney General, *see* Michael Kelly, Settling In: The President's Day; Clinton Cancels Baird Nomination for Justice Dept., *N.Y. Times*, Jan. 22, 1993, *available at* https://nyti.ms/2FocIXn; President George W. Bush's nomination of Bernard Kerik as Secretary of Homeland Security, *see* Mike Allen, Homeland Security Nominee Kerik Pulls Out, *Wash. Post.*, Dec. 11, 2004, *available at* https://wapo.st/2zVWL4I; and President Trump's nomination of Ronny Jackson as Secretary of Veterans Affairs, *see* Clare Foran, Ronny Jackson Withdraws as VA secretary nominee, *CNN*, Apr. 26, 2018, *available at* https://cnn.it/2r2okWg.

## II.     The President's Unilateral Appointment of Mr. Whitaker Was a Worst-Case Scenario That the Attorney General Succession Act and Appointments Clause Were Designed to Prevent.

The events our nation has witnessed over the last two years are as ominous as any scenario that could be imagined.  Directly after an election in which his party lost control of the House of Representatives, the President obtained the resignation of Attorney General Jeff Sessions and purported to install Mr. Whitaker as acting head of the Department of Justice.  At the time (and to this day), President Trump and his associates are facing at least two DOJ investigations—the special counsel's inquiry into potential cooperation between the Trump campaign and Russia and obstruction of that investigation and the U.S. Attorney for the Southern District of New York's investigation of campaign finance and other offenses stemming from hush-money payments to women who claimed they had affairs with Mr. Trump.

In Mr. Whitaker, President Trump appointed as acting head of DOJ a non-Senate confirmed political loyalist who has prejudged the merits of the special counsel investigation, and publicly advocated that it be shut down.[6]  President Trump also reportedly asked Mr. Whitaker if he could assert more control over the

---

[6] While Mr. Whitaker previously held a Senate-confirmed position as U.S. Attorney for the Southern District of Iowa beginning in 2004, he resigned from that office in 2009, well before his appointment as Acting Attorney General.  Not even DOJ takes the position that Mr. Whitaker's prior appointment satisfies the Appointments Clause.  *See* DOJ Office of Legal Counsel Memorandum, Nov. 14, 2018, *available at* https://bit.ly/2qS6bdm.

SDNY investigation by encouraging the Trump-appointed head of that office to revoke his recusal from the case. These and other troubling acts raise concerns about potential interference with the investigations—a so-called Saturday Night Massacre in slow motion. They are precisely the kind of scenario that the AG Succession Act and Appointments Clause are designed to prevent.

### A. President Trump Faced Ongoing DOJ Investigations Implicating Him, His Associates, His Business, and His Presidential Campaign When He Appointed Mr. Whitaker Acting Attorney General.

Of the two ongoing DOJ investigations implicating the President, the most prominent is the one by Special Counsel Mueller into "any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump,"[7] matters "that arose or may arise directly from that investigation,"[8] and crimes "committed in the course of, and with intent to interfere with, the Special Counsel's investigation, such as perjury, obstruction of justice, destruction of evidence, and intimidation of witnesses; and to conduct appeals arising out of the matter being investigated and/or prosecuted."[9]

So far, the Special Counsel's investigation has yielded numerous guilty pleas, including by President Trump's former National Security Advisor Michael Flynn,

---

[7] Deputy Attorney General Rod Rosenstein, Order No 3915-2017, *Dep't of Justice*, May 17, 2017, *available at* https://bit.ly/2qupOcy.

[8] *Id*.

[9] 28 C.F.R. § 600.4; *see* Rosenstein, Order No 3915-2017 (incorporating "matters within the scope of 28 CFR § 600.4").

Trump Campaign chairman Paul Manafort, deputy chairman Rick Gates, and foreign policy advisor George Papadopoulos.[10]  The investigation has also produced detailed indictments of thirteen Russian nationals and related corporate entities that engaged in a social media disinformation campaign,[11] as well as twelve Russian military officers who hacked email accounts, computers, and networks of Democratic Party entities and the Clinton campaign, stole documents and other materials from those accounts, and released them using aliases.[12]  President Trump has reportedly been identified as a subject of the investigation.[13]

In addition, the U.S. Attorney's Office for SDNY is investigating payments made to two women who claim that they had affairs with Mr. Trump and who were allegedly paid for their silence during the campaign.[14]  This investigation has already yielded a guilty plea from former Trump Organization Executive Vice-President

---

[10] Plea Agreement, *United States v. Flynn*, No. 17-cr-232 (D.D.C. Dec. 1, 2017); Plea Agreement, *United States v. Manafort*, No. 17-cr-201 (D.D.C. Sept. 13, 2018); Plea Agreement, *United States v. Gates*, No. 17-cr-201 (D.D.C. Feb. 23, 2018); Plea Agreement, *United States v. Papadopoulos*, 17-cr-182 (D.D.C. Oct. 5, 2017). These and other key filings in cases involving the special counsel are available at https://www.justice.gov/sco.

[11] Indictment, *United States v. Internet Research Agency*, 18-cr-32 (D.D.C. Feb. 16, 2018).

[12] Indictment, *United States v. Netyksho*, 18-cr-215 (D.D.C. Jul. 13, 2018).

[13] Carol D. Leonnig and Robert Costa, Mueller told Trump's attorneys the president remains under investigation but is not currently a criminal target, *Wash. Post*, Apr. 3, 2018, *available at* https://wapo.st/2ItgBXt.

[14] Michael D. Shear, Matt Apuzzo, and Sharon LaFraniere, Raids on Trump's Lawyer Sought Records of Payments to Women, *N.Y. Times*, Apr. 10, 2018, *available at* https://nyti.ms/2qksrMk.

Michael Cohen to an eight-count information that includes two campaign finance violations relating to payments made to "deal with negative stories about" President Trump's relationships with women.[15]  Mr. Cohen has acknowledged under penalty of perjury that these payments were illegal and that then-candidate Trump directed him to arrange them.[16]  President Trump is personally implicated in up to eight potential criminal offenses relating to the commission and coverup of these hush-money payments.[17]

Mr. Cohen is reportedly cooperating with the U.S. Attorney for SDNY and Special Counsel Mueller.[18]  Mr. Cohen recently testified before the House Oversight Committee about this and other matters.[19]

### B. Prior to His Purported Appointment, Mr. Whitaker Had Demonstrated Bias and Conflicts with Respect to DOJ Investigations Involving the President.

---

[15] Plea Agreement, *United States v. Cohen*, 18-cr-602 (S.D.N.Y. Aug. 21, 2018).

[16] William K. Rashbaum, Maggie Haberman, Ben Protess, and Jim Rutenberg, Michael Cohen Says He Arranged Payments to Women at Trump's Direction, *N.Y. Times*, Aug. 21, 2018, *available at* https://nyti.ms/2S37xh8.

[17] Noah Bookbinder, Conor Shaw, and Gabe Lezra, A Campaign to Defraud: President Trump's Apparent Campaign Finance Crimes, Cover-up, and Conspiracy, *Citizens for Responsibility and Ethics in Washington*, Feb. 2019, *available at* https://www.citizensforethics.org/a-campaign-to-defraud-2/.

[18] Rebecca Ballhaus, Nicole Hong, and Joe Palazzolo, Michael Cohen Has Talked With Mueller About Trump In Recent Weeks, *Wall Street Journal*, Sept. 20, 2018, *available at* https://on.wsj.com/2xvn8OF; Dan Mangan, Former Trump lawyer Michael Cohen takes the train to Washington to talk to special counsel Robert Mueller's team, *CNBC*, Nov. 12, 2018, *available at* https://cnb.cx/2qTulV2.

[19] Peter Baker and Nicholas Fandos, Michael Cohen Accuses Trump of Expansive Pattern of Lies and Criminality, *N.Y. Times*, Feb. 27, 2019, *available at* https://nyti.ms/2XIHxLy.

Prior to his purported appointment as Acting Attorney General, Mr. Whitaker made numerous public statements clearly demonstrating bias and prejudgment concerning the investigation.  For example:

- In a May 10, 2017 op-ed, Mr. Whitaker defended the President's firing of then-FBI Director Comey, who at the time he was fired was investigating possible cooperation between the Trump Campaign and Russia.[20]  Mr. Whitaker also opposed the appointment of a special counsel to take over the investigation.[21]

- In three separate media appearances in June 2017, Mr. Whitaker argued that there was no "criminal case to be made on an obstruction of justice" against the President.[22]

- In two separate appearances on CNN in July 2017, Mr. Whitaker defended the decision of members of the Trump Campaign to meet with Russian

---

[20] Matthew Whitaker, Comey served faithfully, but the president made the right decision, *The Hill*, May 10, 2017, *available at* https://bit.ly/2RZ0ndv.
[21] *Id.*
[22] Wolf, Transcript, *CNN*, June 8, 2017, *available at* https://cnn.it/2BhjdY1; Mornings on the Mall, Former U.S. Attorney MATTHEW WHITAKER gives us an overview on Comey's testimony, *WMAL*, June 9, 2017, *available at* https://bit.ly/2KcAG6L; CNN Tonight, Transcript, *CNN*, June 13, 2017, *available at* https://cnn.it/2BfYzXW.

operatives in Trump Tower, arguing that there was no evidence that the meeting violated any laws.[23]

- In a July 26, 2017 appearance on CNN, Mr. Whitaker said, "I could see a scenario where Jeff Sessions is replaced with a recess appointment and that attorney general doesn't fire Bob Mueller but he just reduces his budget to so low that his investigations grinds to almost a halt."[24] In the same appearance, Mr. Whitaker discussed other ways to undermine the special counsel investigation, including by putting pressure on Deputy Attorney General Rosenstein, who initially appointed and oversaw the special counsel, to "cut the budget of Bob Mueller and do something a little more stage crafty than the blunt instrument of firing the attorney general and trying to replace him."[25]

- In an August 6, 2017 CNN article, Mr. Whitaker defended President Trump's position that the Special Counsel would be crossing a "red line" if he began investigating the President's personal finances or businesses.[26]

---

[23] CNN Newsroom, <u>Transcript</u>, *CNN*, July 10, 2017, *available at* https://cnn.it/2PCH3pX.

[24] CNN Tonight, <u>Transcript</u>, *CNN*, July 26, 2017, *available at* https://cnn.it/2DcxUg4.

[25] *Id.*

[26] Matthew Whitaker, <u>Mueller's investigation of Trump is going too far</u>, *CNN*, Nov. 7, 2018, *available at* https://cnn.it/2PjWljj.

- On August 6, 2017, Mr. Whitaker retweeted an article entitled, "Note to Trump's lawyer: Do not cooperate with Mueller lynch mob."[27]

- In an August 11, 2017 radio appearance, Mr. Whitaker claimed that the Special Counsel is biased and that this could give rise to claims of prosecutorial misconduct.[28]

- On August 25, 2017, Mr. Whitaker suggested in a tweet that the FBI's raid of Paul Manafort's home was designed to "intimidate."[29]

Thus, on multiple occasions, Mr. Whitaker publicly decried the legitimacy of the Special Counsel's investigation, repeatedly disputed that the President is guilty of crimes, urged the President's legal team not to cooperate with the investigation, and laid out a roadmap for covertly sabotaging the investigation. It is hard to imagine a more biased individual to oversee what is unquestionably the highest profile investigation currently being conducted in the United States.

In addition, Mr. Whitaker reportedly has a personal and political relationship with Sam Clovis, the former chief policy adviser and national co-chairman of the

---

[27] Glen Fleishman, Matthew Whitaker Takes His Twitter Account Private, After the Acting Attorney General's Tweet About the 'Mueller Lynch Mob' Reveals Conflicts, *Fortune*, Nov. 10, 2018, *available at* https://bit.ly/2Fs4n51.
[28] Andrew Kaczynski, Sessions replacement Matthew Whitaker called Mueller's appointment 'ridiculous' and 'little fishy', *CNN*, Nov. 8, 2018, *available at* https://cnn.it/2TnRI63.
[29] https://twitter.com/MattWhitaker46/status/901175034135420929.

2016 Trump Campaign, and a key witness in the Special Counsel's investigation.[30]

That relationship arises from Mr. Whitaker having previously served as the chairman

of Mr. Clovis' unsuccessful 2014 campaign for Iowa State Treasurer.[31]   Mr.

Whitaker also appears to have served as an informal adviser to Mr. Clovis about

issues relating to the Trump Campaign.[32]  Mr. Clovis told *Reuters* that Mr. Whitaker

is a "dear friend" who served as a "sounding board" for Mr. Clovis while Mr. Clovis

was working on the campaign.[33] At the time of Mr. Whitaker's appointment, Mr.

Clovis reportedly had "kept up" with Mr. Whitaker and stated that they still

"regularly text" one another.[34]  In early November, Mr. Clovis reiterated that he and

Mr. Whitaker are "currently friends" and that he had texted Whitaker congratulations

when he became Acting Attorney General.[35]

---

[30] Ken Dilanian and Mike Memoli, <u>Top Trump Campaign Aide Clovis Spoke to Mueller Team, Grand Jury</u>, *NBC News*, Oct. 31, 2017, *available at* <u>https://nbcnews.to/2zUkAZ6</u>.

[31] <u>Matt Whitaker to Chair Sam Clovis' Campaign for State Treasurer</u>, *Caffeinated Thoughts*, Jul. 1, 2014, *available at* <u>https://bit.ly/2yXNCZD</u>.

[32] *See* Ryan Goodman, <u>Whitaker's Unofficial Role as Adviser to Trump Campaign is a Clear Red Line</u>, *Just Security,* Nov. 12, 2018, *available at* <u>https://bit.ly/2OKLlX2</u>.

[33] Ginger Gibson and Julia Harte, <u>Whitaker's friendship with Trump aide reignites recusal debate</u>, *Reuters*, Nov. 8, 2018, *available at* <u>https://reut.rs/2Q0Zzrt</u>.

[34] Cameron Joseph, <u>Incoming AG Whitaker Has Close Ties With Former Trump Adviser Sam Clovis</u>, *TPM*, Nov. 7, 2018, *available at* <u>https://bit.ly/2PEig4y</u>.

[35] Rosalind S. Helderman, Matt Zapotosky, and Carol D. Leonnig, <u>Sessions's ouster throws future of special counsel probe into question</u>. *Wash. Post*, Nov. 7, 2018, *available at* <u>https://wapo.st/2ORphdg</u>.

Mr. Clovis is a witness to key events being examined by the Special Counsel. For example, court documents identify him as the Trump "campaign supervisor" who responded "great work" to George Papadopoulos when briefed about his meeting with a Russian official and a woman who was introduced as "Putin's niece."[36]

As *amicus* CREW has explained elsewhere, Mr. Whitaker's public statements and ties to Mr. Clovis demonstrated that he should have recused from overseeing the Special Counsel's investigation.[37]   Specifically, the facts outlined above raised serious questions about Mr. Whitaker's compliance with the Standards of Conduct for Employees of the Executive Branch, which requires officials to "act impartially and not give preferential treatment to any private organization or individual" and to avoid even "the appearance" of a violation.  5 C.F.R. § 2635.101(b)(8), (14).  Mr. Whitaker's ties to Mr. Clovis also implicated a DOJ regulation mandating a DOJ official to recuse from a criminal investigation if that official has a personal or political relationship with someone who is "substantially involved" or has a "specific and substantial interest" in the investigation.  28 C.F.R. § 45.2.

---

[36] *See* Rosalind S. Helderman, Who's who in the George Papadopoulos court documents, *Wash. Post*, Nov. 2, 2017, *available at* https://wapo.st/2QVC8N9.

[37] *See* Letter from CREW to L. Lofthus, Nov. 8, 2018, *available at* https://bit.ly/2Dt577e; Letter from CREW to L. Lofthus, Nov. 14, 2018, *available at* https://bit.ly/2OQEs6m.

### C.    President Trump's Purported Appointment of Mr. Whitaker Raised Concerns of Potential Interference with the Special Counsel and SDNY Investigations.

The President did not view Mr. Whitaker's bias and prejudgment with respect to the Special Counsel's investigation as disqualifying; to the contrary, it appears to be *why* Mr. Whitaker was selected by the President to serve as Acting Attorney General.  According to the *New York Times*, "[p]eople close to the President said Mr. Whitaker first came to the attention of Mr. Trump because he liked watching Mr. Whitaker express skepticism about aspects of Mr. Mueller's investigation on television."[38]  According to additional reporting by the *New York Times*, President Trump "soon soured on Mr. Whitaker, . . . and complained about his inability to pull levers at the Justice Department that could make the president's many legal problems go away."[39]

President Trump has made no secret of his view that the investigation is an illegitimate "witch hunt."[40]  Equally well documented are his efforts to control it,[41] including by:

---

[38] Adam Goldman and Edward Wong, Trump Installs a Critic of the Mueller Investigation to Oversee It, *N.Y. Times*, Nov. 7, 2018, *available at* https://nyti.ms/2PPxy5K.

[39] Mazzetti, Haberman, Fandos, and Schmidt, *N.Y. Times*, Feb. 19, 2019.

[40] https://twitter.com/realdonaldtrump/status/1032495180530835456?lang=en.

[41] Barry H. Berke, Noah Bookbinder, and Norman Eisen, Presidential obstruction of justice: The case of Donald J. Trump, 2nd ed., *Brookings*, Aug. 22, 2018, *available at* https://brook.gs/2QTuu69.

- Directing White House Counsel Donald McGahn to prevent Attorney General Sessions from recusing himself in the Russia investigation in early 2017;

- Requesting that Attorney General Sessions undo his recusal in March 2017;

- Firing FBI Director Comey in May 2017, which the President admitted on national television was motivated partly by "the Russia thing";

- Demanding that Attorney General Sessions resign in the immediate wake of Special Counsel Mueller's appointment in May 2017;

- Requesting that the White House Counsel fire the Special Counsel in June 2017; and

- Directing Chief of Staff Reince Priebus to seek Attorney General Sessions's resignation in August 2017.[42]

Alarmingly, President Trump and White House aides viewed Mr. Whitaker as a dependable ally in their efforts to control investigations of the President. In September, when Mr. Whitaker was first floated as a replacement for Deputy Attorney General Rosenstein, the *New York Times* reported that White House Chief of Staff John Kelly had privately described Mr. Whitaker "as the West Wing's 'eyes and ears' in a department the president has long considered at war with him."[43] The *Washington Post* reported in November that President Trump "ha[d] told advisers

---

[42] *See* Berke, Bookbinder, and Eisen, *supra*.

[43] *Id.*

that Whitaker is loyal and would not have recused himself from the investigation."[44] Most alarmingly, Mr. Whitaker reportedly had private conversations with the President's senior aides at the White House in the months preceding the firing of Attorney General Sessions and the announcement that Mr. Whitaker would serve as Acting Attorney General.[45] These conversations reportedly occurred without the knowledge of then-Attorney General Sessions, Deputy Attorney General Rosenstein, and other Senate-confirmed individuals in DOJ's statutory line of succession.[46]

Mr. Whitaker's purported appointment was also unprecedented: since DOJ's creation in 1870, no President has designated an Acting Attorney General who was not currently serving in a Senate-confirmed position.[47] Nor has a President appointed an Acting Attorney General who is on record criticizing an ongoing DOJ investigation of the President and laying out a roadmap for how to curtail or terminate it. *See supra*, Part II.B.

---

[44] Devlin Barrett, Matt Zapotosky, and Josh Dawsey, Jeff Sessions forced out as attorney general, *Wash. Post*, Nov. 7, 2018, *available at* https://wapo.st/2RHdhg1.

[45] Evan Perez, Laura Jarrett, and Ariane de Vogue, Sessions realized too late that Whitaker was auditioning for his job, *CNN*, Nov. 9, 2018, *available at* https://cnn.it/2T11quL.

[46] *Id.*

[47] Katie Benner and Maggie Haberman, Matthew Whitaker, a Trump Loyalist, Is Seen as Ascendant Amid Rosenstein Chaos, *N.Y. Times*, Sept. 26, 2018, *available at* https://nyti.ms/2qz0vF9.

21

### D.     After Mr. Whitaker Was Appointed, President Trump
####        Reportedly Sought His Help to Control the SDNY Investigation.

On December 20, 2018, Assistant Attorney General Stephen Boyd informed Senate Majority Leader Mitch McConnell and Senate Minority Leader Chuck Schumer via letter that Mr. Whitaker was not recusing from the special counsel investigation.[48]  Mr. Boyd explained that although Mr. Whitaker had not sought a formal recommendation from career ethics officials as to whether Mr. Whitaker's supervision of the investigation would create an "appearance of impartiality" issue, they nevertheless advised that if a recommendation had been sought, they would advise that Mr. Whitaker should recuse because "it was their view that a reasonable person with knowledge of the relevant facts likely would question the impartiality of the Acting Attorney General."[49]

Other alarming details have also come to light about President Trump's efforts to get Mr. Whitaker to intervene in investigations on his behalf.  The *New York Times* reported in February that soon after President Trump appointed Whitaker Acting Attorney General, President Trump asked whether U.S. Attorney Berman, who had previously recused from the matter, could be placed in charge of the investigation of hush-money payments and associated campaign-finance and other potential

---

[48] Letter from Assistant Attorney General Stephen Boyd to Senators McConnell and Schumer, Dec. 20, 2018, *available at* https://bit.ly/2TsfDoJ.
[49] *Id.*

22

crimes.[50]  While no evidence has yet to emerge that Mr. Whitaker actually took steps to interfere with the SDNY investigation, he reportedly told associates at DOJ that prosecutors in SDNY required "adult supervision."[51]

## CONCLUSION

In sum, Mr. Whitaker's appointment represents the worst-case scenario that worried the Framers of the Constitution: that, without the legislative check of Senate confirmation, a President "would be governed much more by his private inclinations and interests." *The Federalist No. 76* (A. Hamilton).  If Mr. Whitaker's appointment is deemed legal by the courts, President Trump and those who succeed him in his esteemed office will wield virtually unbridled authority to disregard the Senate's constitutional obligation to provide advice and consent and Congress's power to specify how acting authority may be bestowed.  Through his statements and actions, Mr. Whitaker signaled he was a "plian[t] . . . personal[] all[y] and "obsequious instrument[]" of the President whose publicly stated views are in tension with the investigations.  *Id.*  His was precisely the sort of "incautious" and "corrupt" appointment that Senate confirmation was meant to prevent.  *Weiss*, 510 U.S. at 184.

As *amici* have explained, President's Trump's disregard of the AG Succession Act has ramifications that go far beyond the regulation of bump stocks.  This case

---

[50] *See* Mazzetti, Haberman, Fandos, and Schmidt, *New York Times*, Feb. 19, 2019.
[51] *Id.*

will determine the ease with which this and future Presidents may interfere with ongoing DOJ investigations by installing someone out of the congressionally-specified line of succession.  In undertaking its solemn duty to say what the law is, the court should be mindful that the rule of law, not just a regulation, is at stake.

For these reasons, the decision of the district court should be reversed.

Dated: March 11, 2019                          Respectfully submitted,

/s/ Conor M. Shaw

Conor M. Shaw
cshaw@citizensforethics.org
Nikhel S. Sus
nsus@citizensforethics.org
Citizens for Responsibility and Ethics
in Washington
1101 K St. NW, Suite 201
Washington, D.C. 20005
T: (202) 408-5565
F: (202) 588-5020

# CERTIFICATE OF COMPLIANCE

This brief complies the type-volume limitations of Federal Rule of Appellate Procedure 29(a)(5) and 32(a)(7)(B) because this brief contains 5,346 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ Conor M. Shaw
Counsel for *Amici*

25

## CERTIFICATE OF SERVICE

Pursuant to D.C. Circuit Local Rule 25(f), I hereby certify that on this 11th day of March, 2019, I electronically filed the foregoing with the Court using the CM/ECF system. All parties to the case have been served through the CM/ECF system.

/s/ Conor M. Shaw
Counsel for *Amici*