**ORAL ARGUMENT SCHEDULED FOR MARCH 22, 2019**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

**No. 19-5043 (consolidated with Nos. 19-5042 & 19-5044**

FIREARMS POLICY COALITION, INC. CA 18-3083,

*Plaintiff-Appellant,*

DAMIEN GUEDES; FIREARMS POLICY FOUNDATION; MADISON SOCIETY FOUNDATION, INC.; SHANE RODEN; FLORIDA CARRY, INC.,

*Plaintiffs-Appellees,*

v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; WILLIAM P. BARR, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE UNITED STATES; THOMAS E. BRANDON, IN HIS OFFICIAL CAPACITY AS ACTING DIRECTOR OF THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; UNITED STATES OF AMERICA,

*Defendants-Appellees.*

_____

On Appeal from the United States District Court for the District of Columbia (Nos. 1:18-cv-02988-DLF, 1:18-cv-03086-DLF)

_____

**BRIEF OF CONSTITUTIONAL SCHOLARS AS AMICI CURIAE IN SUPPORT OF PLAINTIFF-APPELLANT FIREARMS POLICY COALITION, INC.**

_____

Stephen A. Weisbrod (Bar No. 14795)
WEISBROD MATTEIS & COPLEY PLLC
1200 New Hampshire Avenue NW Suite 600
Washington, DC 20036
(202) 499-7909
(202) 478-1795 (fax)
sweisbrod@wmclaw.com

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the *amici curiae* certify as follows:

A.     **Parties and *Amici***.  The defendants in district court, and appellees here, are: Matthew G. Whitaker, in his official capacity; the Bureau of Alcohol, Tobacco, Firearms and Explosives; William P. Barr, in his official capacity; Thomas E. Brandon, in his official capacity; and the United States of America.  The plaintiffs in district court, and appellants here, are: Firearms Policy Coalition, Inc. ("FPC"); Madison Society Foundation, Inc.; Shane Roden; Florida Carry, Inc.; David Codrea; Owen Monroe; and Scott Heuman.  The *amici* signing on to this brief are Professors Erwin Chemerinsky, Alan B. Morrison, Victoria Nourse, Peter M. Shane, and Jed Shugerman, all constitutional scholars.  No *amicus curiae* or intervenors appeared in the district court, and the *amici* signing on to this brief are not aware of any additional *amici* or intervenors in this Court at this time.

B.     **Rulings Under Review**.  Under review in this appeal are an order and memorandum opinion entered on February 25, 2019, in the U.S. District Court for the District of Columbia, No. 1:18-cv-02988-DLF, DE26 and DE27 ("District Court Op.").  The matter was before U.S. District Judge

Dabney L. Friedrich. The memorandum opinion is not yet published in the *Federal Supplement* but is available at 2019 WL 922594.

C.    **Related Cases**. The case on review was not previously before this Court. The following cases involve some of the same parties and/or the same or similar issues as presented in this appeal: *In re Grand Jury Investigation* (D.C. Cir. 18-3052, oral argument held Nov. 8, 2018, before Judges Henderson, Rogers, and Srinivasan), *United States ex rel. Landis v. Tailwind Sports Corp.* (D.C. Cir. No. 18-7143), *Blumenthal v. Whitaker* (D.D.C. No. 1:18-cv-02644), *O.A. v. Trump* (D.D.C. No. 1:18-cv-02718), *Michaels v. Whitaker* (D.D.C. No. 1:18-cv-02906).

The *amici* are not aware of any other related cases pending before this Court, or any other U.S. court of appeals, or any local or federal court in the District of Columbia.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ....i

TABLE OF CONTENTS ................................................................. iii

TABLE OF AUTHORITIES ...........................................................v

GLOSSARY ................................................................................ vii

INTEREST OF AMICUS CURIAE ..................................................1

STATUTES AND REGULATIONS..................................................1

PRELIMINARY STATEMENT .....................................................1

ARGUMENT ...............................................................................4

I.    Matthew Whitaker's Purported Appointment as Acting Attorney
      General Is Unconstitutional, or, at Minimum, Presents Grave
      Constitutional Issues. ..............................................................4

      A.    Because the Acting Attorney General Is a Principal Officer, the
            Purported Appointment of Whitaker, an Employee, Violates the
            Constitution........................................................................6

            1.    The Acting Attorney General Is an Officer of the United
                  States, Whose Appointment Must Comport with the
                  Appointments Clause.......................................................7

            2.    The Acting Attorney General Is a Principal Officer Who
                  Must Be Confirmed by the Senate. ...................................8

      B.    Even if the Acting Attorney General Is an Inferior Officer,
            Whitaker's Purported Appointment Violates the Constitution.11

            1.    *Eaton* Creates an Exigency Exception, but There Are No
                  Exigent Circumstances to Justify Whitaker's Purported
                  Appointment...................................................................11

            2.    The Office of Attorney General Is Substantively
                  Different, and the Stakes Far Higher, than the
                  Circumstances of *Eaton*. ...............................................14

II.   These Constitutional Problems Are Avoided by Interpreting the
      Vacancies Reform Act to Be Inapplicable to the Attorney General in
      Light of the Attorney General Succession Act....................................15

      A.    The Statutory Scheme Governing the Appointment of Acting
            Attorneys General Is, at Minimum, Ambiguous. ......................16

B.    FPC's Statutory Interpretation Avoids Constitutional Problems and Should Be Adopted. ...........................................................19

CONCLUSION .............................................................................21

APPENDIX: THE AMICI AND THEIR QUALIFICATIONS ......................1

CERTIFICATE OF COMPLIANCE .................................................1

# TABLE OF AUTHORITIES

**CASES**                                                                                      **Page(s)**

*Buckley v. Valeo*,
    424 U.S. 1 (1976) ...................................................................................7, 10

*Clark v. Martinez*,
    543 U.S. 371 (2005) .......................................................................15-16, 20

*Edmond v. United States*,
    520 U.S. 651 (1997) ............................................................4, 9, 10, 13, 14

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Building &*
    *Constr. Trades Council*,
    485 U.S. 568 (1988) ...................................................................................16

*Lucia v. S.E.C.*,
    138 S. Ct. 2044 (2018) ........................................................................5, 7, 8

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992) ...................................................................................18

*N.L.R.B. v. Catholic Bishop of Chicago*,
    440 U.S. 490 (1979) ...................................................................................16

*N.L.R.B. v. SW General, Inc.*,
    137 S. Ct. 929 (2017) (Thomas, J., concurring) ..........................................4

*The Pocket Veto Case*,
    279 U.S. 655 (1929) ...................................................................................11

*United States v. Eaton*,
    169 U.S. 331 (1898) .............................................................11, 12-13, 15

*United States v. Germaine*,
    99 U.S. 508 (1879) ..................................................................................7, 8

*Weiss v. United States*,
    510 U.S. 163 (1994) ...................................................................................20

STATUTES

5 U.S.C. § 3345 .................................................................... 16-17

5 U.S.C. § 3347 ....................................................................17, 19

28 U.S.C. § 504 ..........................................................................19

28 U.S.C. § 504a ........................................................................19

28 U.S.C. § 505 ..........................................................................19

28 U.S.C. § 506 ..........................................................................19

28 U.S.C. § 508 ....................................................2, 3, 9, 13, 17, 18

28 U.S.C. § 509 ..........................................................................14

41 Cong. Ch. 150, 16 Stat. 162 (June 22, 1870) ...............................2

OTHER AUTHORITIES

Federalist No. 76 (Alexander Hamilton) .............................................3

*Designating an Acting Attorney General: Memorandum for
    Emmet T. Flood, Counsel to the President*, Op. O.L.C., 2018
    WL 6131923 (Nov. 14, 2018).................................................3, 7

*Contingency Plans: Death or Disability of the President*, Office
    of White House Counsel (1993) .................................................9

Cushing, Caleb, *Office and Duties of the Attorney General*, 6
    Op. Att'y Gen. 326 (1854) .......................................................3

H.R. REP. NO. 89-203 (1966) .........................................................9

S. REP. NO. 105-250 (1998)...........................................................17

Steyn, Joshua, *Vacant Reform: Why the Federal Vacancies
    Reform Act of 1988 is Unconstitutional*, 50 Duke L.J. 1511
    (2001) ...............................................................................17

U.S. Const. art. II, § 2 ........................................................ 3, 5, 6, 9

U.S. Const. amend. XXV .................................................................9

# GLOSSARY

| | |
|---|---|
| DE | Docket Entry |
| District Court Op. | DE 27, *Firearms Coalition Policy, Inc., et al. v. ATF, et al.*, No. 1:18-cv-02988-DLF (D.D.C. Feb. 25, 2019) |
| DOJ | Department of Justice |
| FPC | Firearms Policy Coalition, Inc. |
| OLC | Office of Legal Counsel |
| OLC Memo | *Designating an Acting Attorney General: Memorandum for Emmet T. Flood*, Counsel to the President, Op. O.L.C., 2018 WL 6131923 (Nov. 14, 2018) |
| Vacancies Reform Act | Federal Vacancies Reform Act |

## INTEREST OF AMICUS CURIAE[1]

Amici are constitutional scholars who have spent decades studying and writing about the fundamental legal principles at stake in this case.[2] Amici submit this brief to provide the Court their perspective on what the Appointments Clause requires and why the constitutional implications of the appointment of former acting Attorney General Matthew Whitaker are so troubling. Though William Barr was confirmed and sworn in to the position of Attorney General on February 14, 2019, amici believe that the Whitaker appointment could set a concerning precedent for future appointments.

## STATUTES AND REGULATIONS

The relevant statutes are reproduced in the Addendum.

## PRELIMINARY STATEMENT

A few months ago, on the day after the midterm elections, Jeff Sessions submitted an undated, open letter resigning as the U.S. Attorney General expressly at the President's request. *See* Letter from Jefferson B. Sessions III to President Donald J. Trump (Nov. 7, 2018). Almost immediately thereafter, President Trump tweeted that Matthew Whitaker—Jeff Sessions's Chief of Staff—would "become

---

[1] No party's counsel authored this brief in whole or in part; and no person other than the amici and their counsel—including any party or party's counsel—contributed money that was intended to fund the preparation or submission of this brief.

[2] A full list of the amici and their qualifications is appended to this brief.

our new Acting Attorney General of the United States."  Donald J. Trump (@realDonaldTrump), Twitter (Nov. 7, 2018, 11:44 AM).

In doing so, the President bypassed the advice and consent of the Senate and unilaterally installed a government employee, whose name had never been sent to the Senate, let alone approved by it, in a principal constitutional office.  There was no compelling or exigent circumstance that justified such an extraordinary action, as demonstrated by the fact that there were several constitutional officers already confirmed by the U.S. Senate who could have filled in as acting Attorney General, including the Deputy Attorney General, the Solicitor General, and the numerous Assistant Attorneys General, all of whom appear or may be designated to appear in the order of succession to act as Attorney General under 28 U.S.C. § 508.  If Whitaker's elevation were constitutionally permissible in subversion of that order of succession and in the absence of Senate confirmation, then the Appointments Clause is a dead letter.

Ever since the Attorney General first became the head of the Department of Justice in 1870, the order of succession to act as Attorney General in the event of a vacancy has been specifically mandated by statute, and the statute directs the Deputy Attorney General—whom the Senate has confirmed in part as a

constitutional understudy—to fill the office.[3]  We are not aware of even a single previous instance when any president has appointed an acting Attorney General to lead the Department of Justice from a role that did not require Senate confirmation. In fact, the Office of Legal Counsel's lone example, a six-day appointment in 1866, occurred before the Attorney General became a "Department Head," a principal officer specifically identified by Article II.[4]

Yet here, the Court need not decide any of the serious constitutional questions that are posed by the President's attempt to avoid the proper order of succession.  The Court instead may rely on the interpretive canon of constitutional avoidance to decide the matter on statutory grounds:  FPC and the District Court have advanced two mutually incompatible interpretations of the statutory scheme

---

[3] The "Act to establish the Department of Justice" originally designated the Solicitor General to act as Attorney General in the event of a vacancy.  41 Cong. Ch. 150, 16 Stat. 162 (June 22, 1870).  A statute passed in 1953, now codified at 28 U.S.C. § 508, substituted the Deputy Attorney General for that purpose, and contains a more detailed order of succession.

[4] This lone example of an unconfirmed acting Attorney General cited in the Office of Legal Counsel memorandum supporting the Whitaker appointment was an appointee who served for only six days in 1866, before the DOJ had been created in 1870.  In addition, the appointment was made by President Andrew Johnson, infamous for his disregard of Congress and the rule of law, for which he was impeached.  *Designating an Acting Attorney General: Memorandum for Emmet T. Flood, Counsel to the President*, Op. O.L.C., 2018 WL 6131923, at *11 (Nov. 14, 2018) ("OLC Memo").  The Attorney General was described as "quasi-judicial" in that era, which may explain the different historical practice of presidents appointing almost no unconfirmed Acting Attorneys General, relative to the OLC's findings as to other officers.  *See* Caleb Cushing, Office and Duties of the Attorney General, 6 Op. Att'y Gen. 326, 334 (1854).

governing the order of succession to act as Attorney General.  Of the two, only the

District Court's interpretation raises constitutional problems.  This Court should

presume that Congress did not intend to create a succession plan that enables the

President to avoid the bedrock constitutional requirement of advice and consent for

appointments to an office as important as that of the Attorney General, especially

in the absence of exigent circumstances, and should adopt FPC's interpretation of

the relevant statutory framework.

## ARGUMENT

I.    **Matthew Whitaker's Purported Appointment as Acting Attorney General Is Unconstitutional, or, at Minimum, Presents Grave Constitutional Issues.**

The elevation of a Department of Justice employee who is not a

constitutional officer to the role of acting Attorney General—in the absence of any

exigency requiring such elevation and notwithstanding the availability of Senate-

confirmed constitutional officers in the statutory line of succession to fill that

role—raises "grave constitutional concerns because the Appointments Clause

forbids the President to appoint principal officers without the advice and consent of

the Senate." *N.L.R.B. v. SW General, Inc.*, 137 S. Ct. 929, 946 (2017) (Thomas, J.,

concurring).  The constitutional mandate of advice and consent "is more than a

matter of etiquette or protocol; it is among the significant structural safeguards of

the constitutional scheme." *Edmond v. United States*, 520 U.S. 651, 659 (1997)

(internal quotation marks omitted).  The sheer volume of public commentary and

legal challenges that arose immediately in response to Matthew Whitaker's

elevation attest, at minimum, to the presence of contentious and pressing

constitutional issues that counsel great circumspection and, as discussed below,

constitutional avoidance.[5]

The Constitution's "Appointments Clause provides the exclusive process for

appointing 'Officers of the United States.'"  *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2056

(2018) (Thomas, J., concurring) (quoting U.S. Const. art. II, § 2, cl. 2).  This

---

[5] *See, e.g.*, *Michaels v. Whitaker*, Mot. to Substitute, No. 18-496 (U.S. Nov. 16, 2018) (arguing Whitaker's purported appointment is unconstitutional); *Blumenthal v. Whitaker*, Compl., 18-cv-2664 (D.D.C. Nov. 19, 2018) (same); Neal Katyal & George T. Conway III, *Trump's Appointment of the Acting Attorney General is Unconstitutional*, N.Y. TIMES (Nov. 8, 2018), https://www.nytimes.com/2018/11/08/opinion/trump-attorney-general-sessions-unconstitutional.html (same); Laurence H. Tribe, *Yes Whitaker's Appointment Is Unconstitutional. Here's How to Challenge It*, HUFFINGTON POST (Nov. 11, 2018), https://www.huffingtonpost.com/entry/opinion-matthew-whitaker-attorney-general_us_5be891e4e4b0dbe871ac6599 (same); Jed Shugerman, *Attorneys General Are Department Heads under Article II, and Should Be Senate-Confirmed*, SHUGERBLOG (Nov. 21, 2018), https://shugerblog.com/2018/11/21/attorneys-general-are-department-heads-under-article-ii-and-should-be-senate-confirmed/; Walter Dellinger & Marty Lederman, *Initial Reactions to OLC's Opinion on the Whitaker Designation as "Acting" Attorney General*, JUST SECURITY (Nov. 15, 2018), https://www.justsecurity.org/61483/initial-reactions-olc-opinion-whitaker-designation-acting-attorney-general/ (arguing that Whitaker's purported appointment raises difficult questions that counsel use of constitutional avoidance canon); Jed Shugerman, *The OLC's Whitaker problems, big and small: Article II, selective textualism, Department Heads, and historical cherry-picking*, SHUGERBLOG (Nov. 20, 2018), https://shugerblog.com/2018/11/20/the-olcs-whitaker-problems-big-and-small-article-ii-selective-textualism-department-heads-and-historical-cherry-picking/ (criticizing constitutional analysis performed by the Office of Legal Counsel in support of Whitaker's purported appointment).

constitutional provision plainly requires that the President appoint such officers "by and with the Advice and Consent of the Senate," except that "Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone," or in "the Courts of Law" or "the Heads of Departments." U.S. Const. art. II, § 2, cl. 2.[6] The elevation of Matthew Whitaker thus poses the urgent constitutional questions of whether this provision applies to the acting Attorney General (it does) and whether Whitaker's purported appointment complies with its mandate (it does not).

> **A.** **Because the Acting Attorney General Is a Principal Officer, the Purported Appointment of Whitaker, an Employee, Violates the Constitution.**

Determining whether Whitaker's elevation to the role of acting Attorney General without Senate confirmation is constitutionally permissible requires an examination of (1) whether the acting Attorney General is a constitutional officer; and, if so, (2) whether the acting Attorney General is a principal or inferior officer. Because the acting Attorney General is a principal officer, even temporarily assigning the Attorney General's responsibilities to a non-officer employee such as Whitaker violates the Constitution.

---

[6] The Recess Appointment power, U.S. Const. art. II, § 2, cl. 3, is inapplicable here.

1.    **The Acting Attorney General Is an Officer of the United States, Whose Appointment Must Comport with the Appointments Clause.**

The Office of Legal Counsel's memorandum supporting Whitaker's appointment as acting Attorney General implies that the acting Attorney General potentially is not a constitutional officer. *See* OLC Memo at *5 ("[I]t does not matter whether an acting official temporarily filing a vacant principal office is an inferior officer or not an 'officer' at all within the meaning of the Constitution…."). Any such argument is baseless. When Whitaker was acting Attorney General, he headed the Department of Justice with the claim that he exercised the full authority of the Attorney General, which would obviously make him an officer.

If there could be any doubt, the Supreme Court recently clarified in *Lucia*, 138 S. Ct. at 2051, that the "basic framework for distinguishing between officers and employees" is set out in two decisions—*United States v. Germaine*, 99 U.S. 508 (1879), and *Buckley v. Valeo*, 424 U.S. 1 (1976)—and *Buckley* is dispositive here. The inquiry in *Buckley* focused "on the extent of power an individual wields in carrying out his assigned functions." *Lucia*, 138 S. Ct. at 2051. The Court held that "any appointee exercising significant authority pursuant to the laws of the United States is an 'Officer of the United States,' and must, therefore, be appointed in the manner prescribed by" the Appointments Clause. *Buckley*, 424 U.S. at 126.

The acting Attorney General has the power to exercise not merely "significant" but extraordinary authority and is, until replaced, the chief enforcer of the laws of the United States. The acting Attorney General therefore is a constitutional officer, and a mere employee such as Whitaker cannot wield the acting Attorney General's power. Put another way, if, as the Supreme Court held in *Lucia,* administrative law judges, whose decisions are subject to review by their superiors, are officers and must be appointed under the Appointments Clause, so must any person who is exercising the powers of the Attorney General, whether on an acting or permanent basis.[7]

### 2. The Acting Attorney General Is a Principal Officer Who Must Be Confirmed by the Senate.

Moreover, the acting Attorney General is a principal officer, and thus must be confirmed by the Senate. There is no dispute that the Attorney General is a principal officer. Indeed, the Attorney General is not only a principal officer but the head of a department, which is a category of principal officer to which the

---

[7] It is not necessary to apply *Germaine*, but it provides additional support. The Court in *Germaine* held that "civil surgeons" were not officers (let alone principal officers like the Attorney General), because their duties were not "continuing and permanent" but rather "occasional and intermittent." 99 U.S. at 511–12. The tenure of an "acting" Attorney General may be understood to (probably) be shorter than that of an Attorney General, but that tenure is not "occasional and intermittent" like the civil surgeons of *Germaine* who performed official duties only when called upon, were paid only in those instances, could be so called upon "fifty [times] in a year, or none," and were not required to keep a regular office. *Id.* at 512. If the civil surgeon presented a close case, the acting Attorney General does not.

Constitution ascribes special duties and powers.[8]  An acting Attorney General is in

no way disempowered by virtue of "acting" status, *see* 28 U.S.C. § 508, and

therefore must be a principal officer, too.

"Generally speaking, the term 'inferior officer' connotes a relationship with

some higher ranking officer or officers below the President: Whether one is an

'inferior' officer depends on whether he has a superior."  *Edmond v. United States*,

520 U.S. 651, 662 (1997).  The Attorney General has no superior below the

President, and is a principal officer.  The acting Attorney General stands in the

---

[8] *See* U.S. Const. art. II, § 2, cl. 1 ("The President . . . may require the Opinion, in writing, of the principal Officer in each of the executive Departments . . . ."); *id.* cl. 2 ("[T]he Congress may by Law vest the Appointment of such inferior Officers, as they think proper . . . in the Heads of Departments."); *id.* amend. XXV, § 4 ("Whenever the Vice President and *a majority of either the principal officers of the executive departments* or of such other body as Congress may by law provide, transmit to the President pro tempore of the Senate and the Speaker of the House of Representatives their written declaration that the President is unable to discharge the powers and duties of his office, the Vice President shall immediately assume the powers and duties of the office as Acting President.") (emphasis added).
  Indeed, the House Judiciary Committee Report considering the 25th Amendment clarified that "[i]n the case of the death, resignation, absence, or sickness of the head of any executive department, the acting head of the department would be authorized to participate in a presidential inability determination."  H.R. REP. NO. 89-203, at 3 (1966).  Similarly, the White House Counsel's office has suggested that acting heads should participate in any decision under the 25th Amendment.  *Contingency Plans: Death or Disability of the President*, Office of White House Counsel (1993), https://ir.lawnet.fordham.edu/twentyfifth_amendment_executive_materials/10 (explaining that, while the text of the Amendment is ambiguous "as to whether or not 'acting' heads of Cabinet department should participate" in the decision to remove the President under Section 4 of the 25th Amendment, "[m]ost of the legislative history and a leading commentator [ ] suggest that 'acting' heads should participate.").

same shoes, and there is no constitutionally significant reason why the same conclusion should not obtain. If, as Justice Scalia wrote for the Court in *Edmond*, "'inferior officers' are officers whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate," *id.* at 663, then the acting Attorney General cannot be an inferior officer, because he or she is not supervised by anyone—on the contrary, *the acting Attorney General supervises others who were appointed with the advice and consent of the Senate*.

Insofar as the status of principal officer is determined by the exercise of "significant authority" (under *Buckley*) and the degree of supervision (under *Edmond*), an acting Attorney General and an Attorney General are indistinguishable and share the same constitutional status. The only argument that theoretically could excuse appointment of an acting Attorney General without Senate confirmation would be an argument from exigency: emergencies arise, and with them unexpected vacancies, and it therefore may become necessary for inferior officers temporarily to exercise the powers of principal officers. Even so, because no exigency justifies Whitaker's elevation without Senate confirmation, his purported elevation is unconstitutional.

10

**B.    Even if the Acting Attorney General Is an Inferior Officer, Whitaker's Purported Appointment Violates the Constitution.**

The Constitution does not by its terms create any "exigency exception" to the Appointments Clause, so under a strict textualist reading, that would be the end of the analysis.[9]  Nevertheless, well over a century ago the Supreme Court did state that inferior officers can be charged with performing the duties of a superior officer without the advice and consent of the Senate "for a limited time, and under special and temporary conditions."  *United States v. Eaton*, 169 U.S. 331, 343 (1898).  But the factual circumstances of *Eaton* are starkly different from those in the present case.[10]

**1.    *Eaton* Creates an Exigency Exception, but There Are No Exigent Circumstances to Justify Whitaker's Purported Appointment.**

*Eaton* presents an exceptional circumstance:  In 1892, the "Minister Resident and Consul General of the United States to Siam" (a Senate-confirmed

[9] The Whitaker appointment does not arise in any context, exigent or otherwise, that might support a nontextual "practical construction" of the Appointments Clause "given to it by the Presidents through a long course of years, in which Congress has acquiesced."  *The Pocket Veto Case*, 279 U.S. 655, 688–89 (1929).

[10] Significantly, the ultimate question before the Court in *Eaton* was whether the inferior officer was due payment for the performance of his superior's duties, not the legitimacy of the performance itself.  169 U.S. 334–35.  While the Court addressed the constitutional concerns regarding Eaton's appointment in order to determine the appropriate payment, it did not consider the consequences of a determination that Eaton's official acts as acting Consul General to Siam were illegitimate.  *Id.* at 343–44.  Here the primary concern is that Whitaker's appointment was invalid and that he therefore cannot officially act as Attorney General, a substantially more grave question than that presented in *Eaton*.

principal officer) fell seriously ill and left his post in Bangkok, believing that he would die shortly. *Id.* at 331. Before leaving, he appointed a Vice Consul General (pursuant to a regulation that provided for emergency appointments), who had not been confirmed by the Senate, to undertake whatever duties were necessary to continue the work of the Consulate until a permanent replacement arrived. *Id.* at 332–33. In the absence of another Senate-confirmed principal officer in Bangkok, it is not clear what alternative there could have been other than to leave the position vacant and its work not done.

The Supreme Court acknowledged this emergency exception, holding that the inferior officer remained an inferior officer, "charged with the performance of the duty of the superior for a limited time, and under special and temporary conditions," and was "not thereby transformed into the superior and permanent official" who must be confirmed by the Senate in order to assume office. *Id.* at 343. To rule otherwise, the Court reasoned, "would render void any and every delegation of power to an inferior to perform under any circumstances or exigency the duties of a superior officer, and the discharge of administrative duties would be seriously hindered." *Id.* Significantly, the Court's primary concern was not the assumption of policy control of an entire Executive Department, but rather merely "the discharge of administrative duties." The *Eaton* discussion thus was expressly

conditioned on the practical need of inferior officers sometimes to perform when no principal officer is available to do so.

The "special and temporary conditions" of *Eaton* do not merely represent a time restriction; rather, they represent exigent circumstances, and no such exigency could justify charging Whitaker "with the performance of the duty of" the Attorney General, even for a limited time. The Attorney General did not fall ill and unexpectedly resign from his post in a faraway land where no Senate-confirmed replacement could step quickly into his place: the Deputy Attorney General, who is authorized by 28 U.S.C. § 508 to act as Attorney General and was confirmed by the Senate, was available to fill the role immediately. Nor was the vacancy an unexpected emergency: the President caused the Attorney General's resignation and created an elective vacancy. If, for good reasons or bad, the President did not wish to elevate the Deputy Attorney General, he just as easily could have elected not to create the vacancy, or to delay doing so until Whitaker or some other nominee could replace the Attorney General by means of the required constitutional procedure. If the President can manufacture "special and temporary conditions" this way, then he can contrive an end-run around one of "the significant structural safeguards of the constitutional scheme" at any time he chooses. *Edmond,* 520 U.S. at 659.

**2.    The Office of Attorney General Is Substantively Different, and the Stakes Far Higher, than the Circumstances of *Eaton*.**

Moreover, the office of the Attorney General is perhaps a uniquely inappropriate one for indulging such claims of constitutional flexibility.  The power and responsibilities of the Attorney General, in whom all the authority of the Department of Justice is vested, *see* 28 U.S.C. § 509, is a far cry from the power and responsibilities of a 19th-century diplomat to a distant nation.  The office of the Attorney General exercises virtually complete authority over the federal administration of justice in the United States, including authority over vast areas of law, the entire enforcement apparatus of the federal criminal law, and critical national security matters.  The Attorney General is precisely the type of officer that animated the Framers' preoccupation with "curb[ing] Executive abuses of the appointment power and '. . . promot[ing] a judicious choice of [persons] for filling the offices of the union.'"  *Edmond*, 520 U.S. at 659 (quoting Federalist No. 76).

As Alexander Hamilton wrote in Federalist No. 76, a President "who [has] himself the sole disposition of" such an office as Attorney General "would be governed much more by his private inclinations and interests, than when he [is] bound to submit the propriety of his choice to the discussion and determination of a different and independent body."  A President who can so dispose of advice and

consent may be tempted to appoint "unfit characters" who have "no other merit than . . . being in some way or other personally allied to him, or of possessing the necessary insignificance and pliancy to render them the obsequious instruments of his pleasure." *Id.* The Framers did not countenance such a risk in the appointment of principal officers, which is precisely why the Constitution has an Appointments Clause.

*     *     *

In sum, the plain text of the Constitution, the precedents of the Supreme Court, the specific facts of this case as compared to the exigencies of *Eaton*, and the animating concerns of the Appointments Clause, all lead to the same conclusion: Whitaker's purported appointment as acting Attorney General was constitutionally invalid.

## II.     These Constitutional Problems Are Avoided by Interpreting the Vacancies Reform Act to Be Inapplicable to the Attorney General in Light of the Attorney General Succession Act.

As explained above, Whitaker's purported elevation poses grave constitutional problems. FPC advances an interpretation of the succession statutes that avoids these concerns entirely. The interpretive canon of constitutional avoidance therefore requires the adoption of FPC's approach.

Constitutional avoidance is a tool of statutory interpretation that "allows courts to avoid the decision of constitutional questions." *Clark v. Martinez*, 543

15

U.S. 371, 381 (2005).  Where a statutory scheme could bear multiple
interpretations, and one or more of those raises constitutional concerns, the
interpretation that does not raise those concerns should prevail.  *Id.* at 380–82.
This canon guides statutory interpretation by reliance on a presumption that "an
Act of Congress ought not be construed to violate the Constitution if any other
possible construction remains available."  *N.L.R.B. v. Catholic Bishop of Chicago*,
440 U.S. 490, 500 (1979).  "This cardinal principle has its roots in Chief Justice
Marshall's opinion for the Court in *Murray v. Schooner Charming Betsy*, 2 Cranch
64, 118 (1804), and has for so long been applied by [the Supreme] Court that it is
beyond debate."  *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. &
Constr. Trades Council*, 485 U.S. 568, 575 (1988).

 Here, FPC and the District Court offer competing and conflicting
interpretations of the statutory framework governing the order of succession to act
as Attorney General in the event of a vacancy.  It is clear that, at a minimum, the
statutes are amenable to FPC's interpretation.  Thus, to the extent the competing
view is not rejected outright, the statutory scheme is amenable to multiple
interpretations and constitutional avoidance should compel the result.

### A.     The Statutory Scheme Governing the Appointment of Acting Attorneys General Is, at Minimum, Ambiguous.

 The Vacancies Reform Act, which generally governs the appointment of
acting officers of executive agencies in the event of a vacancy, *see* 5 U.S.C.

§ 3345, is the purported statutory basis for Matthew Whitaker's assumption of the role of acting Attorney General. The District Court concluded that Whitaker is authorized to serve as acting Attorney General pursuant to that Act because he worked in the Department of Justice for at least 90 days and was compensated at a GS-15 level or higher. District Court Op. at *34 (citing 5 U.S.C. § 3345(a)(3)). It is true that those minimal requirements satisfy the terms of that statute, although, as described above, the Constitution demands a more exacting procedure. But the Vacancies Reform Act by its own terms disclaims application in this case: The Act provides that it is the "exclusive means for temporarily authorizing an acting official . . . *unless* a statutory provision expressly authorizes . . . [or] designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity." 5 U.S.C. § 3347 (emphasis added). Such a statutory provision exists: 28 U.S.C. § 508 (the "Attorney General Succession Act").[11]

Separate and apart from the generally applicable Vacancies Reform Act, the Attorney General Succession Act is a specialized statute that provides an order of succession in the event of a vacancy in the office of the Attorney General. The

---

[11] The OLC did not investigate the purposes of the Vacancies Reform Act, which were apparently to limit presidential power over appointments and to promote the value of Senate confirmation, in the midst of congressional Republicans curtailing President Bill Clinton in fall 1998 and a looming impeachment. *See* Joshua Steyn, *Vacant Reform: Why the Federal Vacancies Reform Act of 1998 is Unconstitutional*, 50 Duke L.J. 1511 (2001); S. REP. NO. 105-250 (1998).

statute provides that "[i]n case of a vacancy in the office of Attorney General, or of his absence or disability, the Deputy Attorney General may exercise all the duties of that office. . . ." 28 U.S.C. § 508(a).  It continues that when "neither the Attorney General nor the Deputy Attorney General is available to exercise the duties of the office of the Attorney General, the Associate Attorney General shall act as Attorney General," and that "[t]he Attorney General may designate the Solicitor General and the Assistant Attorneys General, in further order of succession, to act as Attorney General."  *Id.* § 508(b).

"[I]t is a commonplace of statutory construction that the specific governs the general," *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992), so absent a compelling argument to the contrary, the more specific Attorney General Succession Act should apply to vacancies in the office of the Attorney General, whatever the effect of the more general statute in other cases.  At minimum, though, it is ambiguous whether the Vacancies Reform Act provides an alternative to the Attorney General Succession Act (as the District Court asserts, *see* District Court Op. at 35), or if the latter is exclusive of the former.[12]  FPC ably has demonstrated this ambiguity.  *See* FPC's Opening Brief at 7-24.  FPC is correct

---

[12] The District Court held that the Vacancies Reform Act exception for office-specific statutes does not preclude the applicability of the Vacancies Reform Act as an option, but rather is intended to make clear that it is not the exclusive option. *See* District Court Op. at *35.  Even assuming this construction is plausible, the alternative construction FPC has advanced is sufficiently plausible to create the ambiguity that triggers the constitutional avoidance doctrine.

18

that the Vacancies Reform Act is not the exclusive means for temporarily appointing acting officers to Senate-confirmed positions, *id.* at 7-8 (citing 5 U.S.C. § 3347), and that, in this instance, the Vacancies Reform Act, as the President apparently interpreted it, conflicts with the Attorney General Succession Act, *id.* at 8. The only question, then, is whether FPC's interpretation avoids the constitutional infirmities inescapably presented by the District Court order. The following section shows that it clearly does.

### B. FPC's Statutory Interpretation Avoids Constitutional Problems and Should Be Adopted.

As described above, the Attorney General Succession Act provides that in the event of vacancy, the powers of the Attorney General may be exercised by the Deputy Attorney General, the Associate Attorney General, the Solicitor General, or one of the Assistant Attorneys General. All of these officers are appointed with the advice and consent of the Senate. 28 U.S.C. §§ 504, 504a, 505, 506. This clear succession plan presents none of the constitutional infirmities discussed above: The powers of the Attorney General are to be exercised temporarily by an officer confirmed by the Senate, and, moreover, by an officer whose confirmation occurred against the backdrop of a statutory scheme that partly defines the roles of respective officers in anticipation of just such a potentiality. In other words, when the Senate confirms a Deputy Attorney General, it confirms him or her as a Deputy *and* as a principal understudy to the superior office, and so on down the line of

19

potential successors. This process satisfies the Appointments Clause. *See Weiss* v. *United States*, 510 U.S. 163, 173–76 (1994) (applying this reasoning to hold that a commissioned officer can act as a military judge consistently with the Appointments Clause without an additional appointment).

The conflict between these two statutes means that, depending on which interpretation prevails, either Deputy Attorney General Rod Rosenstein was the acting Attorney General by automatic effect of the Attorney General Succession Act, or Matthew Whitaker was the acting Attorney General by the President's directive pursuant to the Vacancies Reform Act. These two potential conclusions, however, are not on equal constitutional footing. Under the Attorney General Succession Act, the Senate's confirmation of the Deputy Attorney General implicitly reflects the Senate's consent to that person acting as the Attorney General when the office is vacant. FPC's interpretation therefore is constitutionally sound. The President's purported appointment of Whitaker, by contrast, poses grave constitutional problems. The interpretation that permits such constitutional issues must be avoided, *Clark*, 543 U.S. at 380–82, and it can be so avoided by holding that the Attorney General Succession Act is the exclusive means of temporarily filling vacancies in the office of the Attorney General.

# CONCLUSION

Because FPC's interpretation of the relevant statutes avoids serious

constitutional issues that otherwise must be decided, the Court should reverse the

District Court's order.


Respectfully submitted,

*/s/  Stephen A. Weisbrod*
Stephen A. Weisbrod (Bar No. 14795)
WEISBROD MATTEIS & COPLEY PLLC
1200 New Hampshire Avenue NW Suite 600
Washington, DC 20036
(202) 499-7909
(202) 478-1795 (fax)
sweisbrod@wmclaw.com


March 12, 2019

## APPENDIX: THE AMICI AND THEIR QUALIFICATIONS

**Erwin Chemerinsky** – Dean and Jesse H. Choper Distinguished Professor of Law, The University of California, Berkeley, School of Law

**Alan B. Morrison** – Lerner Family Associate Dean for Public Interest and Public Service Law, The George Washington University Law School

**Victoria Nourse** – Ralph V. Whitworth Professor of Law, Georgetown University Law Center

**Peter M. Shane** – Jacob E. Davis and Jacob E. Davis II Chair in Law, Ohio State University Moritz College of Law

**Jed Handelsman Shugerman** – Professor of Law, Fordham University School of Law

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limit as set out in D.C. Cir. R. 29(a)(5) because, excluding the parts of the documents exempted by Fed. R. App. P. 32(f) and D.C. Cir. R.32(e)(1), this document contains 5,170 words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

March 12, 2019                          /s/ *Stephen A. Weisbrod*
                                        Stephen A. Weisbrod

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the
United States Court of Appeals for the D.C. Circuit by using the appellate
CM/ECF system on March 12, 2019.  All participants in the case are registered
CM/ECF users, and service will be accomplished by the appellate CM/ECF
system.

/s/  Stephen A. Weisbrod
Stephen A. Weisbrod