**ORAL ARGUMENT SCHEDULED FOR MARCH 22, 2019**

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 19-5043 (consolidated with Nos. 19-5042 & 19-5044)

FIREARMS POLICY COALITION, INC., CA 18-3083,
*Plaintiff-Appellant*,

DAMIEN GUEDES; FIREARMS POLICY FOUNDATION; MADISON SOCIETY
FOUNDATION, INC.; SHANE RODEN; FLORIDA CARRY, INC.,
*Plaintiffs-Appellees*,

v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES;
WILLIAM P. BARR, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE
UNITED STATES; THOMAS E. BRANDON, IN HIS OFFICIAL CAPACITY AS
ACTING DIRECTOR OF THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND
EXPLOSIVES; UNITED STATES OF AMERICA,
*Defendants-Appellees*.

_____

On Appeal from the United States District Court for the District of
Columbia (Nos. 1:18-cv-02988-DLF, 1:18-cv-03086-DLF)

_____

**REPLY BRIEF FOR FIREARMS POLICY COALITION, INC.**

_____

Thomas C. Goldstein
Daniel Woofter
Charles H. Davis
Erica Oleszczuk Evans
GOLDSTEIN & RUSSELL, P.C.
7475 Wisconsin Avenue
Suite 850
Bethesda, MD 20814
(202) 362-0636
tgoldstein@goldsteinrussell.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.........................................................................ii

GLOSSARY ............................................................................................ v

INTRODUCTION AND SUMMARY OF ARGUMENT...........................1

ARGUMENT ........................................................................................... 1

I.    Plaintiff's Reading Is Supported By Core Tenets Of Statutory
      Construction ................................................................... 1

II.   The Government's Remaining Arguments Lack Merit .................. 10

III.  Plaintiff's Reading Is Supported By The Canon Of
      Constitutional Avoidance................................................. 15

IV.   Attorney General Barr's Ratification Of The Rule Is Not A
      Basis To Dismiss Plaintiff's Complaint............................. 16

      CONCLUSION ...................................................................25

## TABLE OF AUTHORITIES

### CASES

*A. Philip Randolph Inst. v. Husted,*
838 F.3d 699 (6th Cir. 2016) ................................................................. 24

*Aref v. Lynch,*
833 F.3d 242 (D.C. Cir. 2016) ............................................................... 18

*City of Houston v. Dep't of Hous. & Urban Dev.,*
24 F.3d 1421 (D.C. Cir. 1994) ............................................................... 25

*City of Mesquite v. Aladdin's Castle, Inc.,*
455 U.S. 283 (1982) ....................................................................... 17, 19

*Doolin Sec. Sav. Bank, F.S.B. v. Office of Thrift Supervision,*
139 F.3d 203 (D.C. Cir. 1998) ..................................................... 14, 22, 23

*FEC v. Legi-Tech, Inc.,*
75 F.3d 704 (D.C. Cir. 1996) ........................................................... 20, 21

*FEC v. NRA Political Victory Fund,*
6 F.3d 821 (D.C. Cir. 1993) ................................................................. 20

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
528 U.S. 167 (2000) ....................................................................... 17, 18

*Gutierrez de Martinez v. Lamagno,*
515 U.S. 417 (1995) ........................................................................... 14

*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.,*
684 F.3d 1332 (D.C. Cir. 2012) ............................................................. 20

*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.,*
796 F.3d 111 (D.C. Cir. 2015) ............................................................... 20

*Jam v. Int'l Fin. Corp.,*
139 S. Ct. 759 (2019) ......................................................................... 12

*Knox v. SEIU,*
567 U.S. 298 (2012) ........................................................................... 18

*Landry v. FDIC,*
204 F.3d 1125 (D.C. Cir. 2000) ............................................................. 20

*Marx v. Gen. Revenue Corp.,*
568 U.S. 371 (2013) ........................................................................... 11

*NLRB v. Noel Canning,*
    134 S. Ct. 2550 (2014) ....................................................................20

*Nw. Austin Mun. Util. Dist. No. One v. Holder,*
    557 U.S. 193 (2009) ........................................................................15

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank,*
    566 U.S. 639 (2012) ..........................................................................5

*Shelby County v. Holder,*
    570 U.S. 529 (2013) ........................................................................15

*Stokeling v. United States,*
    139 S. Ct. 544 (2019) ......................................................................13

*Trinity Lutheran Church of Columbia, Inc. v. Comer,*
    137 S. Ct. 2012 (2017) ....................................................................17

*United States v. Giordano,*
    416 U.S. 505 (1974) ..........................................................................5

*Wilkes-Barre Hosp. Co. v. NLRB,*
    857 F.3d 364 (D.C. Cir. 2017) ........................................................20

## CONSTITUTIONAL PROVISIONS

U.S. Const. art. II, § 2, cl. 2 .....................................................1, 19, 20

## STATUTES

5 U.S.C. § 293 & note (1958) ....................................................................12

5 U.S.C. § 294 & note (1958) ....................................................................12

5 U.S.C. § 3345(a) ....................................................................................2

5 U.S.C. § 3345(a)(2)-(3) ..........................................................................7

5 U.S.C. § 3347(a)(1) ..........................................................4, 6, 8, 12, 13

5 U.S.C. § 3347(a)(1)(B) ..............................................................2, 8, 9, 10

10 U.S.C. § 8017 ......................................................................................4

26 U.S.C. § 7801(a)(2) ............................................................................19

26 U.S.C. § 7805 ....................................................................................19

28 U.S.C. § 508 ..............................................................................11, 13

28 U.S.C. § 599A(c)(1) ............................................................................19

Act of July 23, 1868, ch. 227, 15 Stat. 168 .............................................. 11

Reorganization Plan No. 4 of 1953, 67 Stat. 636 ................................... 12

Rev. Stat. § 179 (1st ed. 1874) .................................................................. 11

## OTHER AUTHORITIES

Exec. Order No. 11,957, 42 Fed. Reg. 3295 (Jan. 18, 1977) ..................... 3

Exec. Order No. 9885, 12 Fed. Reg. 5583 (Aug. 20, 1947) ...................... 3

Exec. Order No. 9968, 13 Fed. Reg. 3313 (June 19, 1948) ...................... 3

H.R. Rep. No. 89-901 (1966) .................................................................... 14

D. Mellinkoff, *Mellinkoff's Dictionary of American Legal Usage*
(1992) ...................................................................................................... 14

Memorandum from Rogelio Garcia, Cong. Research Serv., to
David Plocher, Senate Comm. on Governmental Affairs*, re:
Presidential Appointee Positions Requiring Senate Confirmation
that May Be Filled Temporarily Under Statutes Other than the
Vacancies Act* (May 28, 1998) .............................................................. 4

Stephen Migala, *The Vacancies Act and an Acting Attorney
General* (Nov. 15, 2018) (submitted for publication),
http://bit.ly/2EvHhXj ............................................................................ 13

S. 1764-I (Mar. 16, 1998) ......................................................................... 13

S. Rep. No. 105-250 (1998) ....................................................... 3, 9, 10, 13

S. Rep. No. 89-1380 (1966) ...................................................................... 14

*Vacancy Act (5 U.S.C. §§ 3345-3349)*, 2 Op. O.L.C. 72 (1978) ................. 3

# GLOSSARY

| | |
|---|---|
| AG | Attorney General |
| AG Act | Attorney General Succession Act |
| ALJ | Administrative Law Judge |
| DE | Docket Entry |
| GAO | Government Accountability Office |
| JA | Joint Appendix |
| OLC | Office of Legal Counsel |
| Vacancies Act | Federal Vacancies Reform Act |

## INTRODUCTION AND SUMMARY OF ARGUMENT

Every canon of statutory construction compels the conclusion that when the Senate-confirmed official designated by the AG Act is available, the President cannot designate an Acting Attorney General under the Vacancies Act. Recognizing that its position is untenable, the Government has done everything possible to prevent the judiciary from passing on the issue. Under the voluntary cessation doctrine, Attorney General Barr's ratification of the Bump Stock Rule is no obstacle to this Court deciding the merits of Plaintiff's claim.

## ARGUMENT

### I.  Plaintiff's Reading Is Supported By Core Tenets Of Statutory Construction.

Plaintiff's Opening Brief gave seven reasons the district court's ruling is inconsistent with basic principles of statutory construction.

*First*, Plaintiff's reading best respects the text. The Vacancies Act is "exclusive . . . unless" the President makes a recess appointment. So the statute does "not restrict the President's exercise of his constitutional authority under the Recess Appointments Clause." Gov't Br. 50. But if the Government were right that the statute is "non-exclusive," it would. Also, the Vacancies Act is not exclusive with respect to the Government

1

Accountability Office. That "excludes the GAO." *Id.* Exactly. But if this Court adopted the Government's reading of "exclusive," it would not.

Section 3345(a) is significant too. When the Vacancies Act applies, the first assistant "shall" serve, subject only to the President's power under that statute to designate someone else. That is "mandatory." DE16 at 49 (Gov't Dist. Ct. Br.). So, the statute precludes the President from using another statute (like the AG Act) instead.

*Second*, Plaintiff's reading is grammatically correct. As the Government elsewhere acknowledges: the "'unless' clause necessarily modifies the entire phrase." Gov't Br. 48. Plaintiff's Opening Brief gave three concrete examples of how such a phrase always operates. With respect to the hypothetical venue statute, the Government says that "[a] legislature certainly *could* choose, for example to make a general venue statute inapplicable when another statute creating a cause of action contains a more specific (and presumably inconsistent) venue provision." *Id.* at 52. Precisely. The legislature would write that provision just how Congress wrote Section 3347(a)(1)(B).

Here, the purpose of office-specific statutes is to limit the President's options. The Government's assertion that the general vacancies

2

statute did permit the President to override office-specific statutes (Gov't Br. 51) is a truly *outrageous* misrepresentation of the longstanding, fixed view of the Executive Branch. The Office of Legal Counsel never departed from the position that "specific or later statutes dealing with the manner in which an officer may perform the duties of a vacant office prevail[] over the Vacancy Act." *Vacancy Act (5 U.S.C. §§ 3345-3349)*, 2 Op. O.L.C. 72, 72 (1978). Executive Orders uniformly designated acting officials only when the statutorily designated official was unavailable. *E.g.*, Exec. Order No. 9968, 13 Fed. Reg. 3313 (June 19, 1948) (Department of Labor); Exec. Order No. 9885, 12 Fed. Reg. 5583 (Aug. 20, 1947) (Commerce); Exec. Order No. 11,957, 42 Fed. Reg. 3295 (Jan. 18, 1977) (Agriculture). Not surprisingly, there are zero examples of the President using the general vacancies statute to override *any* office-specific designation statute prior to the 1998 Vacancies Act—zero.

*Third*, when Congress intended to give the President this choice, it did so expressly. Plaintiff's Opening Brief collected numerous examples. Congress was aware of these statutes when it enacted the Vacancies Act. *See* S. Rep. No. 105-250, at 16-17 (1998); Memorandum from Rogelio Gar-

3

cia, Cong. Research Serv., to David Plocher, Senate Comm. on Governmental Affairs*, re: Presidential Appointee Positions Requiring Senate Confirmation that May Be Filled Temporarily Under Statutes Other than the Vacancies Act* (May 28, 1998); *see also* 5 U.S.C. § 3347(a)(1) (treating them as exceptions). The Government's assertion that the military provisions "do not authorize the President to proceed under" the Vacancies Act (Gov't Br. 52) is inexplicable. *See* 10 U.S.C. § 8017 (designees serve "until the President, under section 3347 of title 5, directs another person to perform those duties").

Those provisions operate sensibly. The district court's reading of the Vacancies Act does not. Why would Congress put a provision in the Vacancies Act just to let the President evade that statute's time limits? Why would Congress want that choice to determine whether the President may designate someone else? But *most important*: Why would Congress give the President this power only with respect to offices that it historically subjected to special, explicit, independently enacted statutory *restrictions*—leaving all of the Vacancies Act's limits in place for the more than 1,200 other Senate-confirmed offices to which it applies? It would not.

4

For related reasons, the district court's reading puts the Vacancies Act in conflict with the AG Act. The premise of the district court's decision is that both statutes designate an acting official for the *same* vacancy, with different results.

Because the statutes themselves do not give the President the power to choose which statute to follow, the district court conferred it by *ipse dixit*. But statutes are not reconciled by a self-interested party choosing which one it prefers in the circumstances. *E.g.*, *United States v. Giordano*, 416 U.S. 505, 507-08 (1974) (Attorney General could not choose to invoke general delegation authority in light of specific provision governing authorization of wiretaps). If two statutes nominally apply to the same facts with different results, the more-specific one controls. *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012). Here, that is obviously the AG Act.

By contrast, Plaintiff's reading reconciles the statutes. Both the Vacancies Act and the AG Act can apply to the Office of the Attorney General. But only one applies in any given circumstance. The Vacancies Act applies when the officials designated by the AG Act are unavailable.

The Government says that Plaintiff's reading would not permit the President to use the Vacancies Act to designate an Acting Attorney General. It claims the AG Act *always* "designates" someone—whether or not they are available. Gov't Br. 49. If so, Plaintiff still prevails. Everyone agrees the AG Act designates the Deputy Attorney General *here*. The case does not present the further questions (1) whether in other circumstances the AG Act would not designate an acting official, or (2) what power the President would then have. Pl. Br. 6 n.1.

But Plaintiff's reading is right in any event. Even the White House Counsel adopted Plaintiff's interpretation in official guidance that has never been withdrawn. Pl. Br. 6-7. It is also the interpretation reflected in current Executive Orders. *Id.* at 7. And it was how the prior general vacancies statute operated as well. *See supra* at 3.

The Government's litigators now reverse course and argue that Section 3347(a)(1) does not say "exhausted." Gov't Br. 48. But magic words are not required. When the Deputy Attorney General is available, the statute designates that official. When the Deputy is not available, it designates the Associate Attorney General instead. When neither is available, neither is designated. If the statute designates no one, the exception

does not apply—so, the President may invoke the Vacancies Act. That is a perfectly sensible reading that is completely consistent with the text.

*Fourth*, the implications of the Government's reading are huge. If Congress intended them, it would have been explicit. Congress knew that there were numerous office-specific statutes, which had uniformly been read to supersede the general vacancies statute. Further, ever since Congress enacted the AG Act in 1870, it never permitted the President to designate his own choice for Acting Attorney General, displacing the department's second in command. The district court's decision also applies equally to other critical offices, such as the Secretary of Defense, Chairman of the Joint Chiefs of Staff, and Director of National Intelligence. Pl. Br. 19.

With respect to all those offices, the district court held that Congress empowered the President to displace the Deputy specifically confirmed by the Senate, with the possibility of acting service in mind, with any of thousands of employees (for example, more than 6,000 GS-15 attorneys in the Department of Justice alone) or persons confirmed to entirely unrelated offices. 5 U.S.C. § 3345(a)(2)-(3). Congress would have made such a dramatic, important change in the law much more explicit.

*Fifth*, the Government does not dispute that its reading inverts the Vacancies Act's purpose. Congress sought to prevent the President from choosing between the provisions of the Act and departments' organic statutes. This point is addressed by the *amicus* brief of Morton Rosenberg, a principal architect of this exception who the Supreme Court has repeatedly cited in construing the statute.

*Sixth*, Congress did not adopt a provision in the draft legislation that would have produced exactly the district court's reading. The draft provided that unless an office-specific statute expressly superseded the Vacancies Act, both would apply. Pl. Br. 21-22.

*Seventh*, only Plaintiff's reading is consistent with the legislative history. The floor statements uniformly support Plaintiff. Statements by both the sponsor of the legislation and the author of Section 3347(a)(1)(B) are unequivocal that Congress intended office-specific designation statutes to remain exceptions to the Vacancies Act. Pl. Br. 22-23.

The Senate Report could not support the Government. *Contra* Gov't Br. 46. The bill at the time was different. It did not even include the "exclusivity" clause. Also Section 3347(a)(1) had exceptions for two kinds of

statutes: (1) a statute that "expressly provides that the such [sic] provision *supersedes*" the Vacancies Act; and (2) a statute predating the Vacancies Act that "designates an officer or employee." S. Rep. No. 105-250, at 26 (§ 3347(a)(1), (2)(B)). The inference from the text of those dual provisions—where one required that the office-specific provision *expressly* supersede the Vacancies Act—would be that the latter designation-type statute (like the AG Act) does not displace the Vacancies Act.

In any event, the Senate Report supports Plaintiff's reading. It says repeatedly that office-specific designation statutes are "exceptions" to the Vacancies Act. It explains that prior draft "bills made the Vacancies Act supersede other laws governing the temporary service of non-confirmed officials." S. Rep. No. 105-250, at 9. By contrast, the revised legislation "applies to all vacancies in Senate-confirmed positions in executive agencies with a few express exceptions," including "statutes that themselves stipulate who shall serve in a specific office in an acting capacity." *Id.* at 2. The specific section of the Report on which the district court relied describes Section 3347(a)(1)(B) as an "exception[]" to the bill. *Id.* at 15. The paragraph after the one cited by the district court refers to the provisions of Section 3347 as "exception[s] to the applicability" of the statute. *Id.* at

9

17. The paragraph after that refers to "the exception contained in section 3347(a)(2) for existing statutes that provide for the filling of a vacancy in a specific office." *Id*.

## II.     The Government's Remaining Arguments Lack Merit.

The Government repeats the district court's mistaken view that its reading is supported by cross-references between the general vacancies statute and the AG Act. But what matters under Section 3347(a)(1)(B) is that the AG Act "designates" an Acting Attorney General, not the words it uses to do so. That alone is dispositive. Nor is there any reason to believe Congress would have wanted the Vacancies Act to apply to the Attorney General but not to other offices that are subject to designation statutes.

There is no merit to the Government's three arguments relating to cross-references between the statutes.

*First*, the prior version of the general vacancies statute excluded the Attorney General from the President's power to designate an acting official. Gov't Br. 42. That was an unnecessary—indeed, misleading—historical artifact. It was adopted by codifiers to clarify that the Attorney General was not subject to the 1868 vacancies statute, which stated that

its provisions were exclusive. Act of July 23, 1868, ch. 227, § 2, 15 Stat. 168; Rev. Stat. § 179 (1st ed. 1874). As Congress later adopted other office-specific statutes over time, it understood that they were controlling without adding additional explicit exceptions to the general vacancies statute.

It would have been misleading for Congress to have included the Attorney General provision in the Vacancies Act in 1998. That would have created a negative implication that the Vacancies Act overrode all of the *other* office-specific statutes. It also would have excluded the Attorney General altogether, rather than permitting the President to designate an Acting Attorney General when the officials designated by the AG Act were unavailable.

*Second*, the AG Act provides that "for the purpose of section 3345 of title 5 the Deputy Attorney General is the first assistant." 28 U.S.C. § 508; *see* Gov't Br. 42, 53. The Government ignores the undisputed fact that the language *never* had any substantive effect. It was "not necessary." DE16 at 50 (Gov't Dist. Ct. Br.); *see, e.g.*, *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013) (certain statutory provisions are in fact surplusage). The cross-reference had no effect because it was inserted in

11

the 1953 presidential reorganization of Title 28 against the backdrop of the just-discussed provision of the general vacancies statute barring the President from designating an Acting Attorney General. Pl. Br. 27-28. The same plan specified *mandatory* successors to the Deputy Attorney General, obviously not leaving the issue to the general vacancies statute. *See* Reorganization Plan No. 4 of 1953, § 1(a), 67 Stat. 636; *see also* 5 U.S.C. §§ 293 & note, 294 & note (1958). So the cross-reference merely reflected that the AG Act and the Vacancies Act both initially designated the same official.

The Vacancies Act then completely replaced the prior vacancies statute to which the cross-reference had applied. Under the "reference canon," the first assistant cross-reference in the AG Act retained its original meaning. *Jam v. Int'l Fin. Corp.*, 139 S. Ct. 759, 769 (2019). That principle is at its apex where, as here, the new statute includes the *broader* prohibition for all office-specific statutes in Section 3347(a)(1). Congress therefore was not required to also amend the AG Act to retain the cross-reference's meaning.

12

*Third*, Section 3347(a)(1) replaced the provision in the draft bill that stated that "the provisions of section 508 of title 28 shall be applicable." S. 1764-I (Mar. 16, 1998) (§ 3345(b)); S. Rep. No. 105-250, at 25 (§ 3345(c)). By its terms, that provision did not exclude the Attorney General. Further, for the reasons just given, it would have been misleading if it had. In any event, the drafters removed the reference to the Attorney General and adopted Section 3347(a)(1) instead. *Stokeling v. United States*, 139 S. Ct. 544, 551 (2019) (substitution of broader provision for prior enumerated offenses is naturally read to include, not exclude, those offenses). The express reason given to "[d]elete" the Attorney General-specific provision was "because it is included in 3347(a)." Stephen Migala, *The Vacancies Act and an Acting Attorney General* 38-39 (Nov. 15, 2018) (submitted for publication), http://bit.ly/2EvHhXj (staff recommendation). The change was made in an uncontroversial manager's amendment. *Id.* at 39.

Finally, the AG Act provides that the Deputy Attorney General "may exercise all the duties of" the Attorney General, and the later successors "shall" serve as Acting Attorney General. 28 U.S.C. § 508. In this

context, "may" does not connote discretion. *See, e.g.*, *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 432 n.9 (1995) ("'[S]hall' and 'may' are 'frequently treated as synonyms' and their meaning depends on context.") (quoting D. Mellinkoff, *Mellinkoff's Dictionary of American Legal Usage* 402-03 (1992)); JA56-57 (district court reiterating the Government's position that it does not matter whether the office-specific provision uses "may" or "shall"). But even if "may" does connote discretion, the AG Act confers that discretion on the Deputy Attorney General, *not* the President.

Indeed, the Government itself does not dispute that the AG Act makes the Deputy Attorney General's service mandatory. The history explains why. Statutory codifiers substituted "may" for the prior "shall have the power," which was unquestionably mandatory. Pl. Br. 25-26. The codifiers explained that the change merely made the language more concise: "The word 'may' is substituted for 'have the power.'" H.R. Rep. No. 89-901, at 184 (1966); S. Rep. No. 89-1380, at 203 (1966). The codification did not change the statute's meaning. *Doolin Sec. Sav. Bank, F.S.B. v. Office of Thrift Supervision¸* 139 F.3d 203, 210 (D.C. Cir. 1998).

## III. Plaintiff's Reading Is Supported By The Canon Of Constitutional Avoidance.

Space constraints continue to make it impossible to fully brief Plaintiff's constitutional claims in this interlocutory appeal. But the essential points are clear. The Government concedes that there is substantial constitutional doubt that the President can designate an employee to serve as a principal officer. Contrary to the Government's suggestion, the Court should avoid deciding that constitutional question, even if it could arise again in a later case on different facts. *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 204-05 (2009) (applying constitutional avoidance to limit coverage of Voting Rights Act to avoid deciding constitutional challenge to another provision of Act, notwithstanding that constitutional challenge would still arise in later cases involving different facts); *see Shelby County v. Holder*, 570 U.S. 529, 540-41 (2013) (later case deciding the constitutional challenge on different facts).

There is no history of the President designating employees to serve as principal officers, absent a particular exigency. No President has ever before designated an employee (or even a non-confirmed officer) to perform all the functions of a principal officer, displacing a Senate-confirmed deputy. There are less than a handful of instances in history in which the

15

President displaced an available, non-confirmed first assistant with an employee or "any person."

The Government moreover does not doubt that the power it claims here would allow the President to effectively circumvent the Appointments Clause. The district court read the Constitution to permit the President to designate "any person"—literally, any breathing human being—to perform all the functions of a principal officer, indefinitely. Mr. Whitaker's service of roughly 100 days was significant in its own right. But the President easily could have allowed him to serve for nearly two years. Tomorrow, the President could force out the newly confirmed Attorney General and designate yet another employee. Further, the President could do the same for every member of the Cabinet—indeed, every principal officer. That is fundamentally inconsistent with the Clause's central role in the separation of powers. *See* Pl. Br. 31-41.

## IV.  Attorney General Barr's Ratification Of The Rule Is Not A Basis To Dismiss Plaintiff's Complaint.

Plaintiff's complaint and its request for preliminary injunction include both (1) a broad challenge to Matthew Whitaker serving as Acting Attorney General, and (2) a narrower challenge to the Rule. *E.g.*, DE25 at 2 (Joint Status Report). The Government has voluntarily ceased both

16

of those: (1) the President replaced Matthew Whitaker with a confirmed Attorney General, who (2) "ratified" the Rule.[1]

Regularly, the government tries to end litigation by giving the plaintiff what it wants. The case is not then moot. "It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). The Court's decision whether to nonetheless dismiss the case "relat[es] to the exercise rather than the existence of judicial power." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).

That determination is made under the "voluntary cessation" doctrine. Here, the Government "has not carried the 'heavy burden' of making 'absolutely clear' that it could not revert to its policy." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 n.1

---

[1] The Government has waived the argument that Plaintiff can only challenge the Rule, as opposed to Mr. Whitaker's appointment. That argument appears in only one sentence in its brief in this Court that cites no authority (at 75) and nowhere in its briefing in the district court. *See also infra* n.5.

(2017); *see also Friends of the Earth*, 528 U.S. at 189 (government's burden is "stringent"). The voluntary cessation doctrine looks to whether the government could resume the challenged conduct; it does not require proof that the government would injure this particular plaintiff again.[2] The President obviously could remove the Attorney General and designate a new Acting Attorney General under the Vacancies Act. The Government's own brief asserts that the President regularly invokes this authority, which OLC embraces and Mr. Barr reaffirmed. *Aref v. Lynch*, 833 F.3d 242, 251 (D.C. Cir. 2016) (voluntary cessation did not moot the case, because plaintiffs were "challenging the *procedure* used for designation," so had "not 'obtained all the relief' they seek in their complaint with respect to the designation process").

But in any event, the new Acting Attorney General would have sweeping authority to issue regulations regulating firearms. *E.g.*,

---

[2] *E.g.*, *Knox v. SEIU*, 567 U.S. 298, 307 (2012) ("it is not clear why the union would necessarily refrain from collecting similar fees in the future," without regard to whether the particular plaintiff would at that time still be employed and required to pay); *Friends of the Earth*, 528 U.S. at 193 (Court would dismiss only if it was "absolutely clear that Laidlaw's permit violations could not reasonably be expected to recur," without regard to whether the plaintiff would be injured by that particular violation).

26 U.S.C. §§ 7801(a)(2), 7805; 28 U.S.C. § 599A(c)(1). Those regulations easily could harm Plaintiff, which has standing as a membership organization. *E.g.*, http://bit.ly/2W4e2SN (Plaintiff has "hundreds of thousands of members and supporters across the United States"). If that is not sufficient to prevent dismissal, then the government can evade judicial review with respect to essentially any appointment.[3]

The Government's principal argument is that the voluntary cessation doctrine is irrelevant and that this case is controlled by precedents involving "ratification." Gov't Br. 74-76. Not so. If the Government were correct, it could accomplish by "ratification" precisely what the Supreme Court's voluntary cessation precedents forbid it from doing in every other context.

At the outset, the Government fails to acknowledge this Court's express holding that the ratification doctrine is *never* a basis to avoid deciding a challenge under the Appointments Clause. *Intercollegiate Broad.*

---

[3] The government's voluntary cessation still may be relevant. It may be "'that the likelihood of further violations is sufficiently remote to make injunctive relief unnecessary. This is a matter of the trial judge'" to resolve on remand. *City of Mesquite*, 455 U.S. at 289 n.10. Here, the district court decided Plaintiff's motion for a preliminary injunction only on the ground that Plaintiff's substantive claims failed.

19

*Sys., Inc. v. Copyright Royalty Bd.*, 796 F.3d 111, 123-24 (D.C. Cir. 2015) (distinguishing *Landry v. FDIC*, 204 F.3d 1125 (D.C. Cir. 2000)). Here, Plaintiff's Appointments Clause claim is inextricably intertwined with its statutory claim. But at the very least, Plaintiff would be entitled to litigate its Appointments Clause claim to judgment in the district court, subject to later appeal in this Court.

In any event, the ratification cases deal with a totally different issue. Appointments claims follow a regular pattern. An official is found to have been unlawfully appointed. Then a new, lawfully appointed official takes over. That new official "ratifies" an enforcement action of the prior unlawful official and seeks to pursue it against the plaintiff. The plaintiff then makes a new and distinct argument: that the enforcement action is invalid because it was "tainted" by the acts of the original, unlawfully appointed official.[4]

---

[4] *E.g.*, *Wilkes-Barre Hosp. Co. v. NLRB*, 857 F.3d 364, 370-72 (D.C. Cir. 2017) (enforcement of NLRB order in wake of invalidation of recess appointments in *NLRB v. Noel Canning*, 134 S. Ct. 2550 (2014)); *Intercollegiate Broad. Sys.*, 796 F.3d at 123-24 (enforcement of royalty rates in wake of invalidation of appointment of Copyright Board in *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332 (D.C. Cir. 2012)); *FEC v. Legi-Tech, Inc.*, 75 F.3d 704, 707-08 (D.C. Cir. 1996) (civil enforcement action in wake of invalidation of Commission's structure in *FEC v. NRA Political Victory Fund*, 6 F.3d 821 (D.C. Cir. 1993)).

In that context, this Court has held that ratification can remove the taint of the unlawful appointment. If so, the enforcement action is valid and cannot be negated by the invalidity of the original appointment. The Court has looked to whether the lawfully appointed official (1) had the authority to undertake the original action, (2) independently evaluated the merits, and (3) made a detached and considered judgment. Gov't Br. 72.

Those cases do not involve the separate, antecedent question whether the initial appointment was itself unlawful. Instead, they invoke "the discretion the judiciary employs *in the selection of remedies.*" *Legi-Tech*, 75 F.3d at 709 (emphasis added). The Court does not engage in "a standing analysis," but instead addresses "the appropriate remedy." *Id.* at 708 n.5. The question is whether "given the [agency's] remedial actions, there is sufficient remaining prejudice to warrant dismissal" of the government's enforcement action. *Id.*

This case is very different. The Government—likely seeing the handwriting on the wall—has not waited for a judicial determination that Mr. Whitaker's designation was unlawful. This is not an action to enforce the Rule against Plaintiff.

Instead, as a *pre-emptive* attempt to scuttle a challenge to Mr. Whitaker's appointment, Attorney General Barr has "ratified" the Bump Stock Rule. Plaintiff assumes that the ratification was not tainted by Mr. Whitaker's actions in promulgating the Rule in the first place. In turn, under the ratification cases, Plaintiff would not be entitled to defend against enforcement of the Rule based on the appointment. But the question whether the case is moot and should be dismissed is instead governed here—as in every other context—by the voluntary cessation doctrine.

The Government errs in arguing that the case should nonetheless be dismissed based on *Doolin*, 139 F.3d at 211-24. *Doolin* is a case about "taint" as well. There, an agency official issued a notice of charges against the plaintiff bank. An ALJ sustained the charges. A later agency official found that that determination was based on substantial evidence, issuing a cease and desist order.

The plaintiff argued that the first official who issued the notice of charges was unlawfully appointed. But the notice of charges themselves had no operative effect. So the plaintiff's legal claim required it to prove that the notice tainted the later charges.

22

Applying "ratification" principles, this Court held that the notice of charges had not tainted the later cease and desist order. As a result, the plaintiff's claim—not merely the plaintiff's entitlement to a remedy—itself failed. The Court therefore *decided* the plaintiff's appointments claim essentially as a matter of causation, then had no need to decide the other allegations—in particular, whether the first official who issued the notice of charges had been lawfully appointed.

Although *Doolin* thus reversed the usual scenario, the issue remained whether the enforcement action was tainted. In most cases, an official is deemed to have been unlawfully appointed, the government ratifies the earlier action, and the plaintiff argues as a remedial matter that the ratification was tainted. But in *Doolin*, the plaintiff's *own claim*—not merely the remedy—depended on showing the taint.

This case is different. Plaintiff's argument is that the final, operative agency action—the Rule—was itself issued by an official who was serving unlawfully. *Doolin* would be analogous if Mr. Whitaker had only issued the Notice of Proposed Rulemaking and Mr. Barr had subsequently issued that Rule. In that instance, under *Doolin*, Plaintiff could not argue that the Notice nullified the later Rule.

23

Finally, it is essential that the Court guard against the Government's repeated, extraordinary attempts to evade judicial review of Mr. Whitaker's designation. Officials reportedly tried to persuade Mr. Whitaker not to sign *any* formal action that could give rise to a legal challenge during his entire tenure. Pl. Br. 4. They succeeded, except with respect to this one Rule. In other challenges, the Government has evaded judicial review by categorically refusing even to *acknowledge* whether Mr. Whitaker supervised any piece of litigation, except in one instance in which it avoided review by affirmatively acknowledging that he was recusing himself. *Michaels v. Whitaker*, No. 18-cv-2906, DE21 at 2 (D.D.C. Dec. 17, 2018). The Government was happy with the positive ruling of the district court. But once the panel in this Court was identified, Mr. Barr ratified the Rule and the Government sought dismissal. *Cf. A. Philip Randolph Inst. v. Husted*, 838 F.3d 699, 713-14 (6th Cir. 2016) ("[W]e note that the circumstances of the Secretary's issuance of the new form do not inspire confidence in his assurances regarding the likelihood of recurrence—he issued that new form on the same day as the parties' final merits briefs were due before the district court, attaching the form as an exhibit to his brief and only then presenting his mootness argument."), *rev'd on other*

*grounds*, 138 S. Ct. 1833 (2018). If this Court agrees, it will allow the

Government to evade review of these critical issues altogether.[5]

## CONCLUSION

The order of the district court should be reversed.

Respectfully submitted.

/s/ Thomas C. Goldstein
Thomas C. Goldstein
Daniel Woofter
Charles H. Davis
Erica Oleszczuk Evans
GOLDSTEIN & RUSSELL, P.C.
7475 Wisconsin Avenue
Suite 850
Bethesda, MD 20814
(202) 362-0636
tgoldstein@goldsteinrussell.com

March 15, 2019

---

[5] Even if this Court agreed with the Government about the effect of Mr. Barr's ratification of the Rule, the correct course would be to dismiss the appeal, not dismiss the case. Plaintiff's complaint asserts claims for declaratory relief that go beyond the Rule itself. 18-cv-3083 DE1 at 7-8 (Original Complaint); 18-cv-2988 DE18-1 at 10-11 (Amended Complaint). The district court would need to evaluate the effect of the ratification on those claims in the first instance. *See City of Houston v. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421, 1428-30 (D.C. Cir. 1994). Plaintiff sought to bring those claims before this Court now, but the Government refused to consent even to the dismissal of those claims *with prejudice against Plaintiff* and their expedited consideration in this Court.

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limit as set out in this Court's March 1, 2019 Order because, excluding the parts of the documents exempted by Fed. R. App. P. 32(f) and D.C. Cir. R. 32(e)(1), the appellants' reply briefs collectively contain 9,750 words or less.  This document contains 4,966 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and D.C. Cir. R. 32(e)(1).

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century Schoolbook font.

March 15, 2019                    /s/ Thomas C. Goldstein
                                  Thomas C. Goldstein

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system on March 15, 2019. All participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.


/s/ Thomas C. Goldstein
Thomas C. Goldstein