# Supreme Court of the United States
# Office of the Clerk
# Washington, DC  20543-0001

**Scott S. Harris**
Clerk of the Court
(202) 479-3011

March 2, 2020

Clerk
United States Court of Appeals for the District of
Columbia Circuit
333  Constitution Avenue, NW
Washington, DC  20001

    Re:  Damien Guedes, et al.
          v. Bureau of Alcohol, Tobacco, Firearms and Explosives, et al.
          No. 19-296
          (Your No. 19-5042)

Dear Clerk:

The Court today entered the following order in the above-entitled case:

The petition for a writ of certiorari is denied.  Statement of Justice Gorsuch. (Detached Opinion).

Sincerely,

**Scott S. Harris**, Clerk

Cite as: 589 U. S. ____ (2020) 1

Statement of GORSUCH, J.

# SUPREME COURT OF THE UNITED STATES

DAMIEN GUEDES, ET AL. *v.* BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, ET AL.

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 19–296.   Decided March 2, 2020

The petition for a writ of certiorari is denied.

Statement of JUSTICE GORSUCH.

Does owning a bump stock expose a citizen to a decade in federal prison? For years, the government didn't think so. But recently the Bureau of Alcohol, Tobacco, Firearms and Explosives changed its mind. Now, according to a new interpretive rule from the agency, owning a bump stock is forbidden by a longstanding federal statute that outlaws the "possession [of] a machinegun." 26 U. S. C. §5685(b), 18 U. S. C. §924(a)(2). Whether bump stocks can be fairly reclassified and effectively outlawed as machineguns under existing statutory definitions, I do not know and could not say without briefing and argument. Nor do I question that Congress might seek to enact new legislation directly regulating the use and possession of bump stocks. But at least one thing should be clear: Contrary to the court of appeals's decision in this case, *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.* 467 U. S. 837 (1984), has nothing to say about the proper interpretation of the law before us.

In the first place, the government expressly waived reliance on *Chevron*. The government told the court of appeals that, if the validity of its rule (re)interpreting the machinegun statute "turns on the applicability of *Chevron*, it would prefer that the [r]ule be set aside rather than up-

held." 920 F. 3d 1, 21 (CADC 2019) (Henderson, J., concurring in part and dissenting in part) (noting concession). Yet, despite this concession, the court proceeded to uphold the agency's new rule *only* on the strength of *Chevron* deference. Think about it this way. The executive branch and affected citizens asked the court to do what courts usually do in statutory interpretation disputes: supply its best independent judgment about what the law means. But, instead of deciding the case the old-fashioned way, the court placed an uninvited thumb on the scale in favor of the government.

That was mistaken. This Court has often declined to apply *Chevron* deference when the government fails to invoke it. See Eskridge & Baer, The Continuum of Deference: Supreme Court Treatment of Agency Statutory Interpretations From *Chevron* to *Hamdan*, 96 Geo. L. J. 1083, 1121–1124 (2008) (collecting cases); Merrill, Judicial Deference to Executive Precedent, 101 Yale L. J. 969, 982–984 (1992) (same); see *BNSF R. Co.* v. *Loos*, 586 U. S. ___ (2019). Even when *Chevron* deference is sought, this Court has found it inappropriate where "the Executive seems of two minds" about the result it prefers. *Epic Systems Corp.* v. *Lewis*, 584 U. S. ___, ___ (2018) (slip op., at 20). Nor is it a surprise that the government can lose the benefit of *Chevron* in situations like these and ours. If the justification for *Chevron* is that "'policy choices' should be left to executive branch officials 'directly accountable to the people,'" *Epic Systems*, 584 U. S., at ___ (slip op., at 20) (quoting *Chevron*, 467 U. S., at 865), then courts must equally respect the Executive's decision *not* to make policy choices in the interpretation of Congress's handiwork.

To make matters worse, the law before us carries the possibility of criminal sanctions. And, as the government itself may have recognized in offering its disclaimer, whatever else one thinks about *Chevron*, it has no role to play when

liberty is at stake. Under our Constitution, "[o]nly the people's elected representatives in the legislature are authorized to 'make an act a crime.'" *United States* v. *Davis*, 588 U. S. ___, ___ (2019) (slip op., at 5) (quoting *United States* v. *Hudson*, 7 Cranch 32, 34 (1812)). Before courts may send people to prison, we owe them an independent determination that the law actually forbids their conduct. A "reasonable" prosecutor's say-so is cold comfort in comparison. That's why this Court has "never held that the Government's reading of a criminal statute is entitled to any deference." *United States* v. *Apel*, 571 U. S. 359, 369 (2014). Instead, we have emphasized, courts bear an "obligation" to determine independently what the law allows and forbids. *Abramski* v. *United States*, 573 U. S. 169, 191 (2014); see also 920 F. 3d, at 39–40 (opinion of Henderson, J.); *Esquivel-Quintana* v. *Lynch*, 810 F. 3d 1019, 1027–1032 (CA6 2016) (Sutton, J., concurring in part and dissenting in part). That obligation went unfulfilled here.

*Chevron*'s application in this case may be doubtful for other reasons too. The agency used to tell everyone that bump stocks don't qualify as "machineguns." Now it says the opposite. The law hasn't changed, only an agency's interpretation of it. And these days it sometimes seems agencies change their statutory interpretations almost as often as elections change administrations. How, in all this, can ordinary citizens be expected to keep up—required not only to conform their conduct to the fairest reading of the law they might expect from a neutral judge, but forced to guess whether the statute will be declared ambiguous; to guess again whether the agency's initial interpretation of the law will be declared "reasonable"; and to guess *again* whether a later and opposing agency interpretation will *also* be held "reasonable"? And why should courts, charged with the independent and neutral interpretation of the laws Congress has enacted, defer to such bureaucratic pirouetting?

Despite these concerns, I agree with my colleagues that

4 GUEDES v. BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES
Statement of GORSUCH, J.

the interlocutory petition before us does not merit review. The errors apparent in this preliminary ruling might yet be corrected before final judgment. Further, other courts of appeals are actively considering challenges to the same regulation. Before deciding whether to weigh in, we would benefit from hearing their considered judgments—provided, of course, that they are not afflicted with the same problems. But waiting should not be mistaken for lack of concern.